**UNITED STATES EXPANSION BOLT CO. v. H. G. KRONCKE HARDWARE CO. et al.**

(District Court, W. D. Wisconsin. July 24, 1915.)

No. 18–E.

1. PATENTS ⬤⟶328—VALIDITY AND INFRINGEMENT—EXPANSION BOLT.

The McCreery & McCreery patent, No. 623,809, for a one-part expansion bolt, *held* valid as a limited advance in the art, as showing an improved form over those of the prior art, but not infringed.

2. PATENTS ⊕⟶328—VALIDITY AND INFRINGEMENT—SHIELD FOR EXPANSION
     BOLTS.
          The Pleister patént, No. 973,559, for a shield for expansion bolts, *held*
     to disclose invention, and valid within narrow limits, but not infringed.
3. PATENTS ⊕⟶328—VALIDITY AND INFRINGEMENT—LEAD ANCHOR FOR EX-
     PANSION BOLTS.
          The Cook patent, No. 685,820, for a one-piece lead anchor or shield for
     expansion bolts, *held* valid, but not infringed.
4. TRADE-MARKS AND TRADE-NAMES ⊕⟶70—UNFAIR COMPETITION—IMITAT-
     ING FORM OF ARTICLE.
          The copying by complainant, so closely as to deceive purchasers, of
     shields and anchors for expansion bolts, which had been made and sold
     by defendants for many years, and were well known to the trade, *held*
     to constitute unfair competition.
          [Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent.
     Dig. § 81; Dec. Dig. ⊕⟶70.]

In Equity. Suit by the United States Expansion Bolt Company
against the H. G. Kroncke Hardware Company and the Diamond
Expansion Bolt Company. On final hearing. Bill dismissed as to
Hardware Company, and decree in favor of Diamond Company against
complainant on counterclaim.

See, also, 216 Fed. 186.

Banning & Banning, of Chicago, Ill., for complainant.
Alan M. Johnson, of New York City, for defendants.

SANBORN, District Judge. Infringement suit on the patent to
King McCreery and Vance McCreery, dated April 25, 1899, No. 623,-
809, on a one-part expansion bolt designed for securing structures
like signs, ladders, wiring, or pipes to walls of buildings, ceilings,
roofs, etc. The defendant Diamond Company filed three counter-
claims, one for infringement by complainant of the patent to Henry
W. Pleister, No. 973,559, dated October 25, 1910, another for in-
fringement of the patent to John H. Cook, No. 685,820, issued No-
vember 5, 1901, and the third for unfair trade or competition, in that
the complainant has closely copied the forms of devices sold by the
Diamond Company. In addition to these four issues, complainant in
the replication pleads a claim of unfair trade against the Diamond
Company, alleging that it has resorted to slander and defamation of
complainant's financial standing, reputation, and reliability, and in
bad faith has threatened to involve complainant's customers in liti-
gation, if they trade with it. These issues are involved in prior suits
in the United States District Court of the Southern District of New
York and in the Supreme Court of the state of New York, but have
been brought in this case under the liberal provisions of the equity
rules, in order to have them all disposed of in one suit.

The patents relate generally to expansion bolts, called two-part
iron shields and one-part lead anchors. The principle of the expan-
sion bolt is quite simple. The iron shield is like a section of a gun
barrel split in two lengthwise, with the bore tapered so that by the
insertion of a screw the barrel may be expanded and made to firmly
and unshakably grip a socket in a wall. Lead anchors act on the

same principle, and are used for lighter work. The holding power of the devices is greatly increased by having ribs or corrugations on their outer surfaces, circumferential on their inner, and longitudinal on their outer, ends, to prevent both withdrawal and turning of the shield when being fastened. The controversy turns mainly around the question of corrugations, although the Cook patent, while showing external spurs or gripping points, claims only interior features.

After the litigation in New York was commenced, complainant acquired the McCreery patent and brought this suit in Wisconsin, and by the pleadings referred to the whole controversy between the parties has been thus transferred to this district. The Diamond Company has done a large business in expansion bolts for many years, while the United States Company has only recently come into the field. The former, while not covering the whole field, has done more than its share in introducing the expansion bolt to the trade, having spent large sums in advertising and demonstration for some 17 years. From 1908 to 1910 it sold 2,250,000 of its lag shields, and from 1911 to 1913 1,500,000 a year. From 1908 to 1911 it sold 8,000,000 lead anchors, and in 1912 and 1913 some 7,000,000. The selling returns of both forms in 1913 were $168,000. They were known to the trade as "Diamond" shields and "Diamond" anchors. Complainant did not commence the making or sale of the type of expansion bolts here in dispute until late in 1913, but by energetic methods, cutting prices, and copying the form and style of the Diamond goods, has proved a very formidable competitor. The appearance of the respective forms of shields and anchors is so similar as to make it quite difficult to distinguish them, unless the lettering is noticed. As to this point of unfair competition, complainant claims that the devices have reached their final form, and cannot practically be made in any other way, with the necessary efficiency and limit of cost; and that the rule of Pope Automatic Merchandising Co. v. McCrum-Howell Co., 191 Fed. 979, 112 C. C. A. 391, 40 L. R. A. (N. S.) 463, in this circuit, is a controlling authority in favor of complainant. In recent cases in the Illinois district I have refused to apply the rule of this decision to infringing devices while the infringed patent was still in force. Automatic Recording Safe Co. v. Bankers' Registering Safe Co., 224 Fed. 506.

Complainant claims the right to make and sell its bolts and anchors under the patent to the McCreerys, which dates from May 5, 1898, and will not expire until April 25, 1916; also under a public use of an improved form of the McCreery device, which was put into a ventilating system on a building in Cleveland, Ohio, in June, 1903. If this right be conceded, or assumed to exist, two other questions arise: First, whether in so exercising its rights complainant may lawfully adopt the exact form of the devices which for a long time have been produced by the Diamond Company, under the later patents to Pleister and Cook; and, second, whether these two patents are valid, in view of McCreerys' patent, a prior Cook patent, and patents issued to J. W. Tripp in 1901, Anderson and Behler in 1903, and others.

The questions arising on the patents are quite close and technical, because all the inventions are of quite narrow scope. The principle

of the expansion bolt was discovered as early as 1855 by Loudon and Ahlstrom, No. 13,177, followed by Bartlett in 1873, No. 137,338, Calkins in 1894, No. 519,172, and Kreinsen in Germany in 1896, No. 86,778. The three patents here in question, therefore, are simply specific developments or advances of the art, all of a limited character. The Diamond Company has built up a large business, partly on the Cook and Pleister patents, and the United States Company has developed a large and growing trade, based to a considerable extent upon unfair competition with the Diamond Company, but to quite a degree also on another form of expansion bolt, and by very energetic methods. The United States business has not been due to any extent to its patent acquired from the McCreerys, that having been purchased as a protection to its business, after it had been sued for infringement by the Diamond Company.

The great development of the expansion bolt has not been wholly the work of either of the parties. Other concerns have dealt in them very largely. They have advanced on their merits, aided by large and expensive advertising. As a matter of production the devices appear to have reached their cheapest, most efficient, and best looking form. The United States Company claims that the designs cannot be changed in any particular without increase of expense and decrease of efficiency.

[1] *The McCreery Patent, and McCreery Public Use of the Pleister Invention.* The McCreery patent, owned by complainant, issued April 25, 1899, is prior to the Cook and Pleister patents of the Diamond Company, and it is also claimed that a public use of the Pleister patent by the McCreerys is shown by the evidence. McCreerys brought out a one-part shield, with expanding jaws forced apart by the entry of a screw, and having exterior transverse corrugations to hold the expanded portion firmly against the wall socket into which it is driven. Practically all the important elements of the modern shield are found in the McCreery patent, except the longitudinal corrugations or fins designed to prevent the turning of the shield in its socket. Both kinds of corrugations appear in the later Pleister patent, as well as in the patent to J. W. Tripp, No. 688,756, which is later than McCreerys and earlier than Pleister. For better understanding, McCreerys' claim 3 and Pleister's claim are quoted:

"3. An expansion bolt having in combination a ferrule provided with an internally threaded collar at one end, expansible jaws integrally united to said collar and made wedge-shaped on their inner faces, and a threaded device engaged with said collar to project between said jaws to expand the jaws, the outer surfaces of said jaws corrugated on their exterior, the corrugated surfaces of the jaws arranged to contact with the adjacent walls of a receiving orifice, when expanded, substantially the whole length of the jaws, whereby an equal pressure will be exerted by the jaws the whole length thereof upon an outside structure with which the jaws are engaged, substantially as set forth."

"A shield for expansion bolts comprising a plurality of expansion members forming a cylinder having its exterior surface of substantially a uniform diameter throughout and provided with a tapered interior surface, transverse projections on the forward exterior surface of the expansion members and longitudinal projections upon the rear exterior surface of the expansion members, making that end of the expansion members of a diameter slightly greater than the end on which the transverse projections are formed."

It will be seen that the McCreerys describe a one-part and Pleister a device of two or more parts, and that McCreerys do not show the lengthwise ribs or corrugations found in Pleister. It is claimed that the latter were added by McCreerys, and used in a ventilator system on the Colonial Arcade and Colonial Hotel buildings in Cleveland, Ohio, installed in 1903 pursuant to a contract of April 10, 1903. The expansion bolts were used to sustain the discharge pipe or stack outside the buildings, and to fasten it to the outer wall. It appears from the testimony that McCreery bolts with the longitudinal corrugations were driven into sockets bored in the wall and screwed up to hold the pipe securely. Two of these bolts were removed from the wall during the present year, and are in evidence. They had remained in place from 1903. A number of witnesses were called on the question of the use of the bolts, and all documents and books which could be found were produced. The testimony shows that complainant exhausted all possibly available facts relating to such public use, and put in evidence all testimony, papers, and exhibits which could be discovered.

Without detailing this evidence it is enough to say that I am satisfied that it overcomes the heavy burden of proof necessary to establish a prior public use, and establishes beyond any doubt that the McCreery one-part bolt in substantially the same form shown by Pleister (except the number of parts) was designed and sold in 1902, and used in 1903 on the Cleveland ventilator. Although some books and records have disappeared or been destroyed, all facts now discoverable tend only to sustain the prior use, do not contradict each other, and are consistent and harmonious. I find no difficulty in sustaining the McCreery patent as a limited advance in the art, and as an improved form of Calkins or Kreinsen. A small number were sold, and successfully used; the bolt business being crowded out by the pressure of the other work in which the inventors were engaged.

[2] *The Pleister Patent, No. 973,559, February 2, 1910.* The claim has already been quoted. It is distinguished from McCreerys as used in the Cleveland building only in having two or more parts, and in slightly raising the fins or longitudinal corrugations, "making that end of the expansion members of a diameter slightly greater than the end on which the transverse projections are formed." The same elements are found in Tripp, No. 688,756, and in Anderson and Bebler, No. 741,994, and there are also many two-part constructions among the prior patents. At the same time Pleister made a practical advance in the art by producing a convenient bolt, adapted to modern needs, under which has been produced a form of device which is said to be the last word of combined style, cheapness, and efficiency, and which complainant has adopted without variation, except in one particular. Under such circumstances the patent should be sustained as a refined, but substantial, advance in the art. But I do not think it should be held that complainant infringes, by reason of the McCreerys patent and Cleveland use covering the main elements of Pleister, also because the United States construction does not employ fins of greater diameter than the other parts of the shell. In the

latter only one of the fins is raised above the general exterior level. Obviously all this is rather refined, but is in keeping with the whole controversy.

[3] *The Cook Patent, No. 685,820, November 5, 1901.* This invention relates to the one-piece lead anchors used in lighter work than the iron bolts, but made in the same general form. Although the anchors may be used in stone or brick, the matter of exterior corrugations or projections is not so important in this class of work as the other, because the surfaces to which they are generally attached are softer and more yielding, so that they are readily gripped by the greater expansion at the inner end, and because the shell is soft. The important feature of this patent consists in making the bore of the shield slotted lengthwise, instead of a smooth circular bore, as in Cook's expired patent, No. 575,282. In the patent in suit he claims a tubular block longitudinally slotted for the greater part of its length, so that when the screw is inserted threads will be made only in part of the interior surface. The United States Company does not use this peculiar feature, as they make the bore circular without slots. Their anchors are indeed split for the greater part of their length, but not slotted, and the screw engages the whole inner surface of the bore, not merely a part of it. Neither party should be held to infringe any patent held by the other.

[4] *The Question of Unfair Competition by Complainant against the Diamond Company.* It appears that in July, 1913, the general manager of the United States Company called on the manager of the Diamond Company and asked for reduced prices on shields and anchors, and if he could not get them threatened to copy them. About the same time he called on another company dealing in expansion bolts, and stated that he expected to manufacture shells which would be a duplicate of those produced by the Diamond Company, and at the same interview he produced sample lead anchors which were exactly like those of the latter company. Attempts were also made to hire salesmen of the Diamond Company.

When the shields and anchors of the United States Company came out, they were almost exactly like the Diamond devices, with which the trade was familiar. They can only be distinguished by close inspection. The evidence shows that the trade was deceived. The new articles were sold at a lower price, and the Diamond Company's large business, built up after years of effort, was seriously injured. The only defense attempted for thus appropriating the fruits of years of outlay and effort (aside from the patents) is that the devices can be made in no other way on a competitive basis. On this question the burden of proof is on the complainant, and I think the testimony does not support its position. I am satisfied some way can be found to avoid confusion, which will also be as practical and inexpensive as that now employed by complainant. This is most certainly true of the lead anchors.

As to unfair competition by the Diamond Company, the evidence does not support the claim made against it. There should be a decree sustaining each of the three patents in suit, also the prior use, that

none of the patents is infringed, and for an accounting and damages against complainant for unfair competition, without costs for or against any party. The bill should be dismissed as to the H. G. Kroncke Hardware Company.