UNITED STATES EXPANSION BOLT CO. v. H. G. KRONCKE HARDWARE CO. et al.

(Circuit Court of Appeals, Seventh Circuit. April 18, 1916.)

Nos. 2320, 2331.

1. COURTS ⬥263—SUIT FOR INFRINGEMENT—COUNTERCLAIM.
    The right of a defendant in an infringement suit to set up in his answer a counterclaim for infringement of other patents, as authorized by equity rule 30 (198 Fed. xxvi, 115 C. C. A. xxvi), does not depend on whether or not he could have maintained an original suit thereon in that district; any objection on that ground having been waived by complainant by bringing the suit.
    [Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 799, 800; Dec. Dig. ⬥263.]

2. PATENTS ⬥328—VALIDITY AND INFRINGEMENT—EXPANSION BOLT.
    The McCreery and McCreery patent, No. 623,809, the Cook patent, No. 685,820, and the Pleister patent, No. 973,559, all for expansion bolts, each held valid, but for minor improvements and of narrow scope and not infringed.

3. COURTS ⬥263—JURISDICTION OF FEDERAL COURTS—COUNTERCLAIM.
    In an infringement suit where a defendant is a citizen of the same state as complainant and the court has jurisdiction only because of the nature of the suit, it is without jurisdiction to adjudicate a counterclaim for unfair competition, set up by such defendant in his answer, together with a counterclaim for infringement of other patents which is not sustained.
    [Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 799, 800; Dec. Dig. ⬥263.]

Appeals from the District Court of the United States for the Western District of Wisconsin.

Suit in equity by the United States Expansion Bolt Company against

the H. G. Kroncke Hardware Company, the Diamond Expansion Bolt Company, and Henry B. Newhall. Decree for defendants, and complainant appeals. Affirmed in part, and reversed in part.

For opinion below, see 225 Fed. 383.

In case No. 2320:

Banning & Banning, of Chicago, Ill., and Vincent P. Donihee, of New York City, for appellant.

Alan M. Johnson, of New York City, and Thomas F. Sheridan, of Chicago, Ill., for appellee.

In case No. 2331:

Alan M. Johnson, of New York City, and Thomas F. Sheridan, of Chicago, Ill., for appellant.

Banning & Banning, of Chicago, Ill., and Vincent P. Donihee, of New York City, for appellee.

Before KOHLSAAT, MACK, and ALSCHULER, Circuit Judges.

KOHLSAAT, Circuit Judge. On May 8, 1914, appellant, a corporation of the state of New York, brought this suit against one of the appellees, H. G. Kroncke Hardware Company, a Wisconsin corporation, to restrain infringement of claims 1, 2, and 3 of letters patent No. 623,809, granted April 25, 1899, to K. and V. McCreery for an expansion bolt. On May 9, 1914, appellant's counsel advised Alan M. Johnson, whom it knew to be counsel for the Diamond Expansion Bolt Company, a New York corporation and one of the appellees, manufacturer of the diamond screw anchors handled by the Kroncke Hardware Company and charged to be an infringement of said claims, that such suit had been commenced, inclosing a copy of the bill and saying:

"We presume that your clients will undertake the defense of this suit and accordingly inclose herewith a copy of the bill of complaint for your files."

On May 28, 1914, the hardware company filed its answer, traversing the bill and setting up title in the Diamond Expansion Bolt Company of certain hereinafter named patents alleged to cover the diamond screw anchors. On August 6, 1914, the Diamond Expansion Bolt Company filed its petition to be made a formal party. This, appellant contested. On hearing had, August 10, 1914, the District Court granted such leave, in accordance with its opinion (216 Fed. 186). This leave the Diamond Company has availed itself of by joining in the answer of the Kroncke Company filed May 28, 1914, wherein they set up infringement of two patents owned or controlled by them, to wit, Cook patent, No. 685,820, granted November 5, 1901, for an expansion shield, and Pleister patent, No. 973,559 granted October 25, 1910, for an expansion bolt, and also acts of unfair competition on the part of appellant. Thereafter Newhall, licensor of the Pleister patent, a citizen of the state of New Hampshire, also joined in said answer and cross-petition. This answer propounded several questions to appellant. The answer thereupon proceeds, upon the authority of equity rule 30, 198 Fed. xxvi, 115 C. C. A. xxvi, to ask injunction and accounting as to the last-named three items, to wit, the Cook

and Pleister patents and the unfair competition. Appellant's motion to dismiss the patent counterclaims was denied on August 10, 1914— (see [D. C.] 216 Fed. 186). With regard to the jurisdiction of the court to consider these matters, appellant strenuously contended that the Diamond Company, having come into the case for the purpose of defending the suit as brought, might not inject into it matters which would not, as original claims, be enforceable against it in the federal court for the Western district of Wisconsin, and which were therefore not fairly to be deemed available counterclaims within the meaning of equity rule 30. These matters were also covered by the court in its order of August 10, 1914 (see opinion [D. C.] 216 Fed. 186).

There is also embraced within the suit a counterclaim brought by the United States Expansion Bolt Company against the Diamond Company for damages growing out of alleged injury to the former's trade. As no evidence was offered to this claim, it will not be further considered.

The appellant, after the decision of the court last named, proceeded to make reply to the appellee's counterclaims and interrogatories. From the latter it appears that appellant made no sales of any of the articles alleged to infringe appellee's patents, except one sale of about 100 lead anchors made in the Western district of Wisconsin. It does not appear that appellant had any established place of business in that district. The reply traverses the substance of the counterclaims of appellee. A vast amount of testimony was taken. On argument heard, such further proceedings were had that the court sustained all three of the patents and a certain prior use, but found that none of the patents was infringed. Appellee's charge of unfair competition was also sustained, and damages and an accounting awarded, without costs to either party, and the bill was dismissed as to Kroncke. These several orders of the court are assigned as errors, including the order permitting the Diamond Expansion Bolt Company and Newhall to file counterclaims.

[1] The question which first demands attention is that of jurisdiction. Assuming the decision of the District Court as to infringement of the McCreery patent to be correct, had the District Court power to adjudicate upon appellees' two patents and the counterclaim for unfair competition on the facts as presented? There can be no doubt that, as was said in Peninsular Iron Company v. Stone, 121 U. S. 631, 7 Sup. Ct. 1010, 30 L. Ed. 1020:

"It is therefore a suit to which citizens of Ohio are parties on one side and a citizen of Ohio a party on the other, with interests so conflicting that the relief prayed cannot be had without keeping them on opposite sides of the matter in dispute."

To all intents and purposes, so far as the counterclaims are concerned, appellant was a defendant and entitled to have the question of infringement in the Pleister and Cook patents tried in the district in which it was an inhabitant or in any district in which it had infringed, and where it had an established place of business, provided it did not waive its right thereto. First National Bank v. Morgan, 132 U. S. 141, 10 Sup. Ct. 37, 33 L. Ed. 282.

While suit could not, in the first instance, have been maintained in Wisconsin by the Diamond Expansion Bolt Company against appellant over its objection upon either the Pleister or the Cook patent, we have no doubt but that appellant waived that objection by its action in bringing the suit in the Wisconsin district as well as by statements of counsel shown on pages 1085 and 1087 of the record in the premises with regard to the patents of the counterclaims. The proceeding was one for infringement of a patent in each case. Of such a case some federal court had jurisdiction. So that no question of federal jurisdiction is involved. Appellant had the right to waive the question of privilege, and did so. We think the District Court proceeded properly to treat those matters as coming within the provisions of new equity rule 30 as pertaining to the matter of jurisdiction in equity and not to federal jurisdiction.

[2] We proceed now to a consideration of the merits of the counterclaim for infringement. The opinion of the District Court on final hearing is found in (D. C.) 225 Fed. 383, wherein the court fully discusses the merits of the three patents in suit, holding as above stated, that while each is valid, none of them is infringed. A careful review of the evidence leads us to concur in the decision of the District Court as to these patents and also as to the question of prior public use. The field is very narrow. The prior art discloses the general principles which pervade each of the devices, and the latter must depend upon minor improvements for the disclosure of invention.

The McCreery patent contains the interior tapering opening longitudinally through the shield, whereby the inside or initially inserted end of the shield is expanded to a greater degree than other portions thereof by the advancing screw. True, it discloses a large iron expansion device, but the principles are there except the exterior longitudinal guides which serve to direct and steady the inward progress of the expansion bolt or shield and keep it from turning. These guides were found to have been added to the device of the McCreery patent in the prior public use expansion bolts made by appellant, taken from the Colonial Arcade and Colonial Building in Cleveland, Ohio. Fig. 2 of the device of the McCreery patent is herewith reproduced:

The later devices are, of course, improvements on McCreery and the public use bolts. They disclose more elaborate expansion bolts with somewhat different exterior ribs or projections. These may be, and

probably are more convenient and more ornamental. · But the improvements are at most very narrowly patentable. The old iron McCreery expansion bolt, with the longitudinal guide flange or rib additions of the prior public use device, tells the whole story, though roughly. For instance, in the alleged infringed device of the Pleister patent, Fig. 1 of which is herewith reproduced, it will be seen that

the principal difference is in the varying proportions of the horizontal ribs on the exterior of the bolt. These, it is claimed, serve also to keep the shields of the expansion bolt from turning with the action of the screw when it is forced in. The two part feature, per se, was not new.

The Cook expansion shield is practically the same thing as the Pleister device, made from some "soft ductile material." It has the tapering bore of McCreery, the circumferential ribs or what is equivalent thereto, but differs, as the District Court says, in respect to the slots between the parts of the shield. The following cut is a reproduction of Figs. 1 and 4 thereof:

These two patents, Cook and Pleister, while differing in minor respects from McCreery and the prior art, do not differ essentially, but only in detail, in respect to the general features embraced within the McCreery patent as modified by the prior use devices. Whatever invention they possess must be found in features not used by appellant.

We therefore hold the three patents in suit to be valid but not infringed, and that portion of the decree of the District Court which so holds is affirmed.

[3] With regard to the counterclaim for unfair competition, a different situation arises. As to that, the federal court as such had no original jurisdiction, there being in it no federal question or diversity of citizenship. The District Court took jurisdiction under rule 30. But that rule pertains only to equitable jurisdiction. It can-

not, and was not intended to, confer federal jurisdiction. Geneva Furniture Co. v. Karpen, 238 U. S. 254, 35 Sup. Ct. 788, 59 L. Ed. 1295; Mecky v. Grabowski (C. C.) 177 Fed. 591. The facts of the present case, we think, bring it within the reasoning and language of the Geneva furniture case. There the District Court dismissed the bill for want of jurisdiction. The defendants in that suit were charged, as appears from the opinion of the court: (a) With contributing to the infringement of letters patent belonging to the plaintiff by wrongfully inducing and persuading designated licensees of the plaintiff to make, use, and sell devices embodying the inventions of the patents in circumstances not authorized or permitted by their licenses; (b) with wrongfully procuring such licensees to violate their license contracts in designated particulars, some of which have no bearing on the charge of infringement; and (c) with refusing to perform stipulations whereby the defendants agreed to assign to the plaintiff certain other letters patent. The prayer is for an injunction and accounting in respect of the contributory infringement, for an injunction and damages in respect of the procured breach of the licensees' contractual obligations, and for the specific performance of the stipulations to assign the other letters patent. The plaintiff is described as a New York corporation, one of the defendants as a West Virginia corporation, another as an Illinois corporation, and the third as an individual citizen of the latter state. The West Virginia company is alleged to have a regular and established place of business in the Northern district of Illinois, and the acts of infringement and contributory infringement are charged to have been committed in that district.

The court found it had jurisdiction of the matter involved in the charge of infringement, as arising under the patent laws of the United States and as to such matters reversed the decree of the District Court, dismissing the bill for want of equity.

"But the other portions of the bill," says the court, "stand upon a different footing. The causes of action which they present—those not founded upon an unauthorized making, using, or selling of devices embodying the inventions of the plaintiff's patent, but resting only upon a breach of contractual obligations—do not arise under the patent laws. New Marshall Co. v. Marshall Engine Co., 223 U. S. 473, 32 Sup. Ct. 238, 56 L. Ed. 513; Henry v. Dick Co., 224 U. S. 1, 14, 15, 32 Sup. Ct. 364, 56 L. Ed. 645, Ann. Cas. 1913D, 880. As to them no federal court can take jurisdiction of a suit against the West Virginia company without its consent, save in the district of its residence or that of the plaintiff (Jud. Code [Act March 3, 1911, c. 231] § 51, 36 Stat. 1101 [Comp. St. 1913, § 1033]); and it hardly needs statement that the jurisdiction as limited and fixed by Congress cannot be enlarged or extended by uniting in a single suit causes of action of which it has jurisdiction. Upon this point the rule otherwise prevailing respecting the joinder of causes of action in suits in equity must, of course, yield to the jurisdictional statute. Thus the West Virginia company's objection, while not good as to the entire bill, was good as to the causes of action not arising under the patent laws. Whether these causes of action can be retained as against the other defendants, after they are eliminated so far as the West Virginia company is concerned, is not open to consideration now. It is not a question of federal jurisdiction within the meaning of Jud. Code, § 238 (Comp. St. 1913, § 1215) but only one of general equity jurisdiction and practice applicable as well to state as to federal courts. Bogart v. Southern Pacific Co., 228 U. S. 137, 33 Sup. Ct. 497, 57 L. Ed. 768, and cases cited.

"The decree of dismissal is reversed, and the cause is remanded for further proceedings in conformity with this opinion."

It is said in Standard Paint Co. v. Trinidad Asphalt Co., 220 U. S. 446, 31 Sup. Ct. 456, 55 L. Ed. 536, where a suit had been brought against a Missouri corporation by a West Virginia corporation in the Eastern judicial district of Missouri to restrain infringement of a trade-mark and for unfair competition, in which suit the trade-mark was not upheld:

"The opposite parties to the suit are citizens of different states; and while this diversity of citizenship was not necessary to give the Circuit Court jurisdiction of the case in so far as it involved the validity of the trade-mark, it was necessary to give the court jurisdiction of the issue of unfair competition."

In Ludwigs Mfg. Co. v. Ludwigs, 206 Fed. 64, 124 C. C. A. 194, this court held, in a case brought for infringement of a patent and for unfair competition, by one citizen of Illinois against another citizen of Illinois, that, having sustained the patent and infringement thereof, it would entertain the charges of unfair competition, "which, though in one aspect arising from fraud in trade, in a fairer aspect are aggravations of the infringement." Inasmuch, however, as, in the present case, the infringement is not sustained, there are no damages to be aggravated. There are a number of cases which hold that the charge as to which there is jurisdiction being found by the court to be not sustained, whether because of invalidity of the patent or want of infringement, the court cannot adjudicate other charges jurisdiction over which depended alone upon the jurisdiction acquired through the main or original charge of the bill. Elgin National Watch Co. v. Illinois Watch Co., 179 U. S. 665, 667, 21 Sup. Ct. 270, 45 L. Ed. 365; Leschen Rope Co. v. Broderick, 201 U. S. 166, 172, 26 Sup. Ct. 425, 50 L. Ed. 710; Hutchinson, Pierce & Co. v. Loewy, 163 Fed. 42, 90 C. C. A. 1; Burt et al. v. Smith, 71 Fed. 163, 17 C. C. A. 573; Sprigg v. Fisher (D. C.) 222 Fed. 964; Bernstein v. Danwitz (C. C.) 190 Fed. 604; Mecky v. Grabowski, supra; Cushman v. Atlantis Fountain Pen Co. et al. (C. C.) 164 Fed. 95. To the same effect are Warner v. Searle & Hereth Co., 191 U. S. 195, 24 Sup. Ct. 79, 48 L. Ed. 145, and Schiebel Toy & Novelty Co. v. Clark, 217 Fed. 760, 133 C. C. A. 490, in which latter case it is explained that the records disclose that in both Globe Wernicke Co. v. Macey Co., 119 Fed. 696, 56 C. C. A. 304, and Samson Cordage Works v. Puritan Cordage Mills, 211 Fed. 603, 128 C. C. A. 203, L. R. A. 1915F, 1107, decided in the Sixth Circuit, diversity of citizenship existed.

The case of Siler v. L. & N. R. R. Co., 213 U. S. 175, 29 Sup. Ct. 451, 53 L. Ed. 753, is cited in support of the jurisdiction of the District Court herein. The bill in that case attacked the validity of an act of the Legislature of Kentucky as in violation of section 1 of the Fourteenth Amendment and on other grounds, among which was the charge that it violated the federal Constitution by reason of the enormous fines and penalties therein provided for a violation of any of the provisions of the act. The bill also charged that the order of the commission created by the act was invalid as violating the federal

Constitution if it was authorized by the statute, and also that it was unauthorized by the statute, the latter a local question.   In its desire to avoid the decision of a constitutional question, the court proceeded to investigate this last question, holding that it had jurisdiction so to do as had the circuit court because of the jurisdiction upon the other allegations of the bill, and, finding that the commission had exceeded its authority, affirmed the decision of the circuit court.   But while the grounds of attack both on the order and the statute were separate and distinct, the subject-matter over which the federal court had jurisdiction, their alleged invalidity was a single one.   And as that charge of invalidity was held to have been based, in good faith, on a violation of the federal Constitution, the case holds only that under such circumstances the court may determine the question of its validity as well on other grounds—grounds which, if they alone had been alleged, would not have brought the controversy within the jurisdiction of the federal courts.   We do not deem this case on the facts presented authority for the proposition contended for in the present case, especially in view of the other decisions of the Supreme Court above referred to.   The counterclaims herein are distinct and independent causes of action, not merely separate grounds for a single cause of action, and that of unfair competition may not be dealt with by the federal court in the absence of diversity of citizenship.   Appellees cite Foster's Federal Practice (4th Ed.), vol. 1, p. 193, where it is said:

"After a federal court has acquired jurisdiction, through the existence of the necessary difference of citizenship between the original parties, ancillary proceedings may be therein instituted, although parties upon the different sides of the controversy are citizens of the same state, and there is no other ground of federal jurisdiction."

An examination of the authorities cited by the author for the text shows that in every one of them reference is made to some special facts—such as the death of a party and substitution of an administrator, or other change in parties, which facts would not oust jurisdiction; or where the res is in the federal court, as a judgment or decree attacked, or property in regard to which suit is brought, or some situation exists in which suit would not be effective outside the particular federal court whose jurisdiction would be involved.   The excerpt is not, nor was it intended by the author to be, an argument in support of the jurisdiction of the federal courts in cases such as those here presented.

For the reasons above stated, that part of the decree of the District Court which finds unfair competition and orders an accounting is reversed, with direction to the District Court to dismiss the counterclaim for unfair competition for want of jurisdiction, and tax the costs one-third to appellant and two-thirds to appellees.