### W. F. BURNS CO. v. AUTOMATIC RECORDING SAFE CO.

(Circuit Court of Appeals, Seventh Circuit. October 27, 1916. Rehearing Denied March 27, 1917.)

Nos. 2287, 2301, 2302, 2304, 2314.

1. PATENTS ⚯328—VALIDITY AND INFRINGEMENT—PORTABLE SAVINGS BANK.
   The Fisher patent, No. 793,779, for a portable savings bank, *held* not anticipated and valid, claims 1, 5, 6, 7, and 8 *held* infringed, and claims 2, 3, and 4 not infringed.

⚯For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

2. PATENTS ⊂⇒328—VALIDITY AND INFRINGEMENT—SAVINGS BANK.
   . The Fisher patent, No. 990,534, for a savings bank, held valid, and claims 2 and 6 *held* infringed, and claims 5 and 7 not infringed.

3. PATENTS ⊂⇒328—VALIDITY AND INFRINGEMENT—SAVINGS BANK.
   The Fisher patent, No. 990,535, for a savings bank, claim 6, *held* not infringed.

4. PATENTS ⊂⇒328—VALIDITY AND INFRINGEMENT—SAVINGS BANK.
   The Fisher patent, No. 1,072,709, for a savings bank, *held* valid, and claims 1, 2, 3, and 5 infringed.

5. PATENTS ⊂⇒328—VALIDITY AND INFRINGEMENT—SAVINGS BANK.
   The Fisher patent, No. 1,073,847, for a savings bank, *held* valid, and claims 1, 2, and 5 infringed.

6. PATENTS ⊂⇒328—INFRINGEMENT—SAVINGS BANK.
   The Thompson patent, No. 758,340, for a savings bank, claim 4, *held* not infringed.

7. COURTS ⊂⇒290—JURISDICTION OF FEDERAL COURTS—SUIT FOR UNFAIR COMPETITION.
   A federal court is without jurisdiction of a cause of action for unfair competition, where there is no diversity of citizenship between the parties, although joined with a cause of action for infringement of patent.

   [Ed. Note.—For other cases, see Courts, Cent. Dig. § 832.]

8. PATENTS ⊂⇒319(1)—SUIT FOR INFRINGEMENT—DAMAGES.
   If a defendant, in the sale of infringing articles, has aggravated the damages by unfair competition, or by infringing complainant's trademark, by using it on the articles, any damages thus caused may be awarded in the accounting.

   [Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 577, 578, 580, 581, 583, 584, 586.]

9. TRADE-MARKS AND TRADE-NAMES ⊂⇒7—WORDS SUBJECT OF APPROPRIATION—TELLER.
   The word "Teller," as a designation of a portable savings bank, *held* appropriate as a trade-mark, and complainant, by its use, either alone or in connection with other words, *held* to have acquired an exclusive right thereto, in which it was entitled to protection.

   [Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 11.]

Nos. 2287, 2301, 2304, and 2314:
   Appeals from the District Court of the United States for the Eastern Division of the Northern District of Illinois; Arthur L. Sanborn, Judge.

No. 2302:
   Appeal from the District Court of the United States for the Western District of Wisconsin; Arthur L. Sanborn, Judge.

   Suits in equity by the Automatic Recording Safe Company against the W. F. Burns Company, against the Savings Loan & Trust Company, and against the Bankers' Registering Safe Company, the White Brass Castings Company, Forrest B. Page, and others. In each case there are cross-appeals. Reversed in part.

   For opinions below, see 224 Fed. 506, 512, and 513.

⊂⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Nos. 2287 and 2301:
   Dwight B. Cheever, of Chicago, Ill., for appellant.
   John H. Lee, of Chicago, Ill., for appellee.
No. 2302:
   Thomas F. Sheridan, of Chicago, Ill., for appellant.
   John H. Lee, of Chicago, Ill., for appellee.
Nos. 2304 and 2314:
   John H. Lee, of Chicago, Ill., for appellant.
   Gerald G. Barry, of Chicago, Ill., for appellees.

   Before KOHLSAAT, MACK, and ALSCHULER, Circuit Judges.

MACK, Circuit Judge. These cases, together with a case against a dealer, in the District Court for the Southern District of New York, involving however, the product of the White Brass Castings Company, were all heard by Judge Sanborn about the same time and were decided together. His opinions will be found reported in 224 Fed. 506, 512, and 513.

On the appeal of the Automatic Company, the decree rendered in the New York case was modified, and claims 1 and 5 of the first Fisher patent in suit, No. 793,779, were held infringed. 231 Fed. 985, 146 C. C. A. 181. While the appellee in that case did not appear on the appeal, an examination of the opinion of the Circuit Court of Appeals for the Second Circuit, and of the briefs submitted therein by the appellant, demonstrates that the important questions presented here were fully raised and carefully examined in that court.

In the opinion in Bankers' Registering Safe Company Case, claim 8 of the first Fisher patent in suit No. 793,779, which was in issue only in that case, was held to be infringed. In view of certain limitations found in claims 1, 5, 6, and 7, and in view of the finding as to claim 8, the court said that it was unnecessary at that time to decree whether or not these other claims were infringed. In the decree, however, claims 1 and 5 were held not infringed, and claims 6 and 7 were held to be infringed.

In all of the cases, claim 4 of the Thompson patent, No. 758,340, and claims 6 and 7 of the first Fisher patent in suit, were in issue. In addition thereto, in the Bankers' Registering Safe Company Case, claims 2, 3, and 4 of the first Fisher patent in suit, claim 7 of the second Fisher patent in suit, No. 990,534, claim 6 of the third Fisher patent in suit, No. 990,535, and claims 1, 2, and 5 of the fourth Fisher patent in suit, No. 1,073,847 and in the Savings Loan & Trust Company Case claims 2 and 6, and in the Burns Company Case claim 5, of the second Fisher patent in suit, were likewise in issue. While all of these claims were held valid, only claims 6 and 7 of the first Fisher patent in suit were found to be infringed. As to these, however, each defendant was enjoined.

Furthermore, in the Bankers' Registering Safe Company Case the court held that the complainant had acquired a valid trade-mark in the word "Teller" as the designation of its product, and enjoined the defendants both from violation thereof and from unfair competition, especially in the simulation of its wares. In the W. F. Burns Company Case, the charge of unfair competition was not sustained.

The questions involved will be more clearly apprehended by a consideration of the claims in suit, the following extracts from the several patent specifications, some of the patent drawings, and some of the drawings of the devices of the several defendants:

### Thompson Patent, No. 758,340, April 26, 1904.

4. In a savings bank, the combination, with a case, of a plurality of receptacles located within said case, said case having horizontal slots through the vertical wall thereof near its top registering with openings communicating with the individual receptacles through which coins may be inserted, a plate located above the tops of said receptacles, and projections depending from said plate into the open upper ends of said receptacles and extending below the horizontal planes of the openings leading thereinto.

Thompson specifies:

My invention has for its object the production of a portable savings bank, in which shall be provided a series of tubes or compartments for receiving coins, said compartments so arranged that the coins of one denomination are separated from those of another denomination. and provision to lock said coins in the compartments until intentionally removed. The invention consists, essentially, in the provision of a series of tubes engaged together to form **one** article, provided with means for inserting a coin in each tube, and provided with means for locking the coin therein until it is intentionally removed. *C* is a plate arranged to fit into the top of the frame *A*, preferably made of stamped metal, with suitable depressions therein, so that it will fit over the ends of the tubes and hold them in place, as shown at *c*, Fig. 2.

### Fisher Patent No. 793,779, July 4, 1905.

1. In a portable savings bank, a core comprising a plurality of rigid vertical flanges spaced apart to form compartments to receive coins, the distance between the flanges of each compartment being greater than the diameter of the coins to be received by such compartment, the adjacent flanges being united at corresponding ends by walls adapted to partially surround the coins.

2. In a portable savings bank, a core comprising a base, a plurality of rigid radially projecting flanges spaced apart to form compartments to receive coins, the distance between the outer edges of the radial flanges at each side of each compartment being greater than the diameter of the coins to be received by such compartment.

3. In a portable savings bank, a core comprising a horizontal base, a plurality of rigid vertical radially projecting flanges spaced different distances apart to form compartments to receive coins of different denominations, the distance

between the outer edges of the radial flanges at each side of each compartment being greater than the diameter of the coins to be received by such compartment.

4. In a portable savings bank, a core comprising a circular horizontal base and a plurality of rigid vertical radially projecting flanges spaced different distances apart to form compartments to receive coins of different denominations, the inner edges of adjacent flanges being united by curved walls conforming to the peripheries of the coins, and the outer edges of adjacent flanges being spaced apart a distance greater than the diameters of the coins to be received by the compartment between such flanges.

5. In a savings bank, the combination, with a base, of a plurality of rigid vertical flanges supported above the base and spaced apart to form compartments for the coins, the distance between the flanges of each compartment being greater than the diameter of the coins to be received by such compartment, a cover comprising a surrounding side wall and top wall united thereto, said cover adapted to inclose the base and the flanges thereon, and means for detachably securing said cover to the base.

6. In a savings bank, the combination, with a circular base, of a plurality of vertical flanges supported above the base and spaced apart to form compartments for the coins, walls uniting the inner edges of adjacent flanges, said walls forming a central compartment, a cover comprising a surrounding side wall and top united thereto and adapted to inclose the base and flanges thereon, means for detachably securing said cover to the base, said cover having slots therethrough communicating with the compartments between the flanges and said central compartment.

7. In a savings bank, the combination, with a circular base, of a plurality of vertical flanges supported above the base and spaced apart to form compartments for the coins, walls uniting the inner edges of adjacent flanges, said walls forming a central compartment, a·cover comprising a surrounding side wall and top united thereto and adapted to inclose the base and flanges thereon, means for detachably securing said cover to the base, said cover having slots therethrough communicating with the compartments between the flanges and said central compartment, and inwardly yielding plungers carried by the cover and normally obstructing the slots leading to said compartments.

8. In a savings bank, the combination, with a base, of a plurality of vertical flanges supported above the base and spaced apart to form compartments for the coins, a cover comprising a surrounding side wall and top wall united thereto, said cover adapted to inclose the base and the flanges thereon, and a lock secured to the underside of said top and bolt of which engages a slot in one of the walls between the inner edges of the two adjacent flanges.

Fisher specifies:

In portable savings banks as at present constructed it is impossible to keep the various denominations of coins separate when they are removed from the bank, and it is therefore necessary for the bank teller to first separate the coins into denominations preparatory to counting them. The primary object of my invention is to provide a portable savings bank in which the various denominations of coins, when the bank is opened, may be kept separate and at the same time be accessible to the teller, so that he may readily count the coins without first having to assort them according to their denominations. A further object of my invention is to provide a portable savings bank which will be simple in construction, inexpensive in manufacture, and convenient in use.

My invention, generally described, consists in providing in a portable savings bank a core comprising a base having radial flanges spaced apart to partially surround the separate piles of coins of different denominations in the bank, thereby facilitating the adding of the contents of the bank. Reference letter A designates a core preferably formed in an integral casting and comprising a base and a series of radial flanges $A'$, $A^2$, $A^3$, $A^4$, $A^5$, $A^6$, and $A^7$. The radial flanges are spaced apart to correspond with the diameters of the various denominations of coins. The inner edges of the adjacent flanges are united by curved walls conforming to the circumference of the coins of the several denominations. A space $a$ is formed within the inner walls which unite the inner edges of the flanges into which bills may be deposited.

The manner of using my invention is as follows: The savings banks are locked by the banking house, which distributes the same, and the key kept, so that the banks may only be opened when returned by the depositors. The coins of various denominations are inserted into the proper compartments through the slots B' and are prevented from being removed by the respective plungers C'. When the savings bank is returned to the banking house, the cover is removed, leaving the coins exposed, as shown in Fig. 3. As the various denominations are then in separate compartments, the total amount in the bank may be readily counted by the teller without the necessity of first separating the coins into their different denominations.

From the foregoing description it will be observed that I have invented an improvement in portable savings banks, consisting in the provision of a core having compartments conforming to the sizes of the coins of different denominations and by means of which the counting of the coins is facilitated when the bank is opened.

### Fisher Patent No. 990,534, April 25, 1911.

2. In a savings bank, the combination of a body provided with coin receptacles, a casing comprising a top and depending peripheral wall, said peripheral wall having coin slots in its upper portion corresponding with said coin receptacles, inclined angular form sockets located in the upper portion of said casing near said peripheral wall, and angular form plungers projecting from said sockets and serving as guards for said coin slots.

5. In a savings bank, a casing comprising a top and a depending peripheral wall having coin slots therein adjacent said top, in combination with an inner plate lying adjacent said top and equipped peripherally with slot guards, and an external plate having clenching lugs extending through perforations in said top and having clenched engagement with said inner plate.

6. In a savings bank, the combination of a body provided with coin receptacles, a casing comprising a top and depending peripheral wall, said peripheral wall having coin slots in its upper portion corresponding with said coin receptacles, slot guard sockets located in the upper portion of said casing near said peripheral wall, and nonrotatable plunger form slot guards received by said sockets and having beveled end surfaces guarding said coin slots.

7. In a savings bank, the combination of a body having coin receptacles, a casing comprising a top and depending flange receiving said body, a plate within said casing adjacent said top and provided with a central lock casing formed partially integral with said plate, said plate having a central recess in its upper side, a fillet in said recess, and a bolt slidably mounted in said lock casing beneath said fillet.

### Fisher Patent No. 990,535, April 25, 1911.

6. In a savings bank, the combination of a body having a plurality of coin chambers open at their outer sides and upper ends, a casing receiving said body and provided near the top of its peripheral wall with coin admission slots corresponding with said chambers, a plate located adjacent the casing top and equipped peripherally with bearings, pivotally mounted spring actuated slot guards carried by said bearings, and a centrally disposed locking device carried by said plate.

### Fisher Patent No. 1,072,709, September 9, 1913.

1. In a savings bank, the combination, with a casing having a coin slot therein, of a wall provided with a T-slot located near said coin slot, said wall cut away on a plane intercepting the slot, and a plunger entered in said T-slot,

said plunger having its outer extremity guarding said coin slot and having flanges above its lower portion engaging the lateral grooves of said T-slot.

2. A savings bank, comprising a casing having coin slots in its peripheral wall, said casing equipped with guides at its upper wall, said guides having their lower walls cut away and having lateral slots, and plunger form coin slot guards having their outer ends located adjacent the coin slots, said guards having lateral flanges movable in said lateral slots and having also portions projecting below said flanges.

3. In a savings bank, the combination of a body provided with coin receptacles, a casing having a vertical wall provided in its upper portion with coin slots corresponding with said coin receptacles, a plate carried by the top wall of said casing and provided with inclined guides having cut-away lower walls, and T-form plungers movable in said guides and having their outer ends projecting beneath said plate and serving as guards for said coin slots.

5. In a savings bank, the combination, with a casing having a coin slot therein, of a wall provided with an inclined guide slot open at its lower side, and a plunger form slot guard working in said guide slot and having a portion normally projecting through said open lower side.

Fisher Patent, No. 1,073,847, September 23, 1913.

1. In a savings bank, the combination with a casing having a peripheral wall provided with a coin admission slot, of a resilient slot guard holder, and a slot guard carried thereby and having a pivot portion adapted to effect flexing thereof when the slot guard is swung about its pivot.

2. In a savings bank, the combination with a casing having a top wall and having also a peripheral wall provided with a coin admission slot, of a resilient arm adjacent said top wall and projecting near the peripheral wall, and a swinging slot guard having a pivot portion confined between said resilient arm and said top wall, and adapted to flex said arm when the slot guard is swung about its pivot portion.

5. In a savings bank, the combination with a casing having a top wall and having also a peripheral wall provided with a coin admission slot, of a bent slot guard having a head portion forming an angle with its body portion, and a resilient arm between which and said top wall said head portion is normally confined said head portion being adapted to flex with said resilient arm when the slot guard is swung in the operation of inserting a coin.

Fisher specifies:

Attached to the lower surface of the top member 16 of the casing is a guard-carrying member 19 equipped with the resilient arms 20, 21, which carry the slot guards 22. The member 19 may comprise a stamping of resilient metal. The outer ends of the arms 20 and 21 are located close to the peripheral wall 17 of the casing; and each resilient arm has its end portion provided with a slot or notch 23 adapted to accommodate the arm 24 of the swinging slot guard 22. The shank of the arm 24 is bent at its upper end and equipped with a head 25, thus affording lugs or pivot portions adapted to rest upon the upper surface of the resilient arm 20 or 21, as the case may be, when the arm or shank 24 of the guard is entered in the slot 23. It will be noted from Fig. 1 that the head 25 of the guard is confined between the outer end of the spring arm 21 and the top wall 16 of the casing, while the arm 24 of the slot guard bears against the vertical wall of the casing, the lower end of the arm 24 guarding the coin slot 18. It will be noted also that the head 25 forms an obtuse angle with the arm 24, so that the spring arm is bent downwardly, or placed under tension.

When a coin is inserted through the slot 18, the guard swings inwardly to the position shown in Fig. 9, in which operation the spring arm is placed under still greater flexure. The inward swing of the arm 24 is limited by the shoulder 26 at the base of the slot 23, and the casing wall, as is evident from Fig. 9. Thus, it is impossible to dislodge the slot guard; and it is evident that after the coin is passed through the slot the guard will resume its normal vertical position, so that coins, once inserted, cannot be removed through the coin slots.

Complainant's Drawing of Bankers' Registering Safe Company's Safe.

Complainant's Drawing of Defendant's (Savings, Loan & Trust Company's)
Safe.

The appeals and cross-appeals to this court present all of the questions passed upon in the District Courts. We shall endeavor to avoid repetition of the matters contained in the opinions hereinabove referred to, and shall confine our review to such supplementary statement of facts and of law as may be essential to make clear the grounds of our agreement or disagreement with the several conclusions therein reached.

Complainant's Drawing of Defendant's (W. F. Burns Co.'s) Structure.

[1] 1. On the appeal and cross-appeals of the Automatic Company, the principal question in each case is the scope of claims 1 and 5 of the first Fisher patent, No. 793,779, in suit. If they are valid, and if they are not to be limited by the specifications, prior art, or the proceedings in the Patent Office, as evidenced by the file wrapper and contents, to the device shown in the drawings of the patent, if the difference in language between these two claims, on the one hand, and claims 2, 3, and 4, on the other, is to be given its natural effect, and the language of the claims their natural interpretation, then, as clearly pointed out in the opinion of Judge Lacombe, these claims must be held infringed.

Concededly, the prior art shows no direct anticipation. The cited coin holders, toy banks, purses, and poker chip boxes, while having some elements in common with those of the savings bank, serve a different purpose and operate in a different way. Fisher did not merely carry forward an old art by slight improvements, or by the mere substitution of equivalent elements. Practically, and from a commercial standpoint, he invented a new and useful product; as fully pointed out by Judge Sanborn, his invention lay, not in any or all of the elements, but in the novel combination of core and casing, equipped as specified by him and resulting in the first successful portable savings bank—a bank which, because of its core arrangement, as distinguished from Thompson's multiple complete compartments and from the earlier single compartment safes, enabled each denomination of coins to remain in separate stacked position, and thus to be much more rapidly handled and counted by the bank teller when he unlocked the safe and removed the casing. We fully concur in holding that Fisher exercised more than mere mechanical skill—indeed, a fair measure of inventive genius—in devising this construction with its novel method of operation.

Nor does the prior art compel such a construction of the claims as to exclude therefrom Fisher's later oval-shaped bank, in which the flanges are curved and the coin compartments consequently narrower at the vertical slot opening than the diameter of the coins, and thus to restrict the invention to devices conforming strictly to that shown in the patent drawings. Complete coin tubes, such as Thompson gath-

ered together to form his bank, have neither flange nor vertical slot opening, and the prior art patents for other articles with cores or compartments show both kinds of flanges and slots. Neither the radial nor the circular flange, with its resulting open or narrow slot compartment, was new in Fisher. His novel combination and novel method of operation would produce a similar result in either case.

It is true that in the specifications the flanges are always described, and in the drawings they are shown, as radial. But the broader language, "vertical flanges," of these claims should not be so limited by the specifications and drawings as to deprive the inventor of some part of his actual invention, unless it clearly appears therefrom or from the proceedings in the Patent Office that he had intentionally renounced the broader grant. It is to be noted, however, that the vertical compartment walls as shown in the drawings are not strictly speaking radial, as they do not radiate from a common center. It is apparent, too, that the inventor in his specifications was only describing the structure of his preferred form shown in the drawing, and not intending to renounce any part of his invention, or to limit it to this specific device.

Greatest stress, however, is laid on the Patent Office proceedings. These five claims were first rejected on the Young toy bank patent, No. 697,309. The amendments then made, designed more clearly to indicate that the compartments were to be wider than the coins, so that, when these dropped in, they would lie flat, expressly stated as to claims 1 and 5 that the flanges—that is, the vertical flanges—were so spread apart that the distance between the flanges of each compartment should be greater than the diameter of the coins; but as to claims 2, 3 and 4, in which the flanges were described as radial, the amendment properly specified that this greater distance was not merely between the flanges, but between the outer edges of the radial flanges.

In our judgment, the effect to be given to this express differentiation cannot be destroyed by the apparently inadvertent and certainly erroneous statement of the solicitor, in his remarks accompanying the amendment, that:

"Claims 1, 2, 3, 4, and 7 (the present claim 5) have been amended more clearly to distinguish applicant's invention from the prior art, by setting forth the fact that the distance between the outer edges of the adjacent flanges is greater than the diameters of the coins to be received."

While stating that "this feature facilitates the counting of the contents of the bank," this facility is said to be due to the stacked condition of the coins within the compartment and their ready removability by the teller in counting them, as against the necessity in Young's bank of removing and then assorting the coins before they can be counted. Neither here nor in the specifications did the applicant assert that this ready removability was lateral. If the distance between the outer edges of the flanges is sufficient to enable the bank teller to grasp the stack with his thumb and a finger, it can be readily lifted upwards and removed vertically and counted as readily as if withdrawn horizontally. Undoubtedly the inventor had in mind this lateral remova-

bility. It inhered in his preferred form of structure, that with the radial flanges. But it was not essential to his invention. With or without it, his device, the first practical recording safe, had that novel combination of elements resulting in a new mode of operation, giving a ready accessibility for removal in stack and greater facility in counting the contents, which evidences invention.

A different question would be presented if the actual amendment of claims 1 and 5 had in fact been identical with that of claims 2, 3 and 4; if the solicitor here, as in Matheson v. Campbell, 78 Fed. 910, 24 C. C. A. 384, had erroneously amended the specification or the claims. The answer thereto we need not now consider. Here, however, the language of the amendment itself is clear and correct. The error occurs only in the remarks accompanying it and forming no part of the grant itself. The applicant, never called upon to renounce any part of his actual invention, cannot be estopped by this inadvertent erroneous statement of his solicitor, unnecessarily made in thus attempting merely to differentiate an earlier patent cited against him.

Moreover, the claims, as amended, were again rejected on the Young patent, in view of Holmes patent, No. 202,545, for a coin holder. The examiner stated that to make the Young coin tubes out of elastic material, as in Holmes, whereby the coins could be laterally removed, did not amount to invention. To meet this objection, a further amendment was made in each of these claims by describing the flanges as rigid, and, thus amended, the claims were allowed. It is obvious, however, that in the device described in claims 2, 3, and 4 as first amended, the lateral removability was due not to resiliency of the flanges, but to their radial form and the resulting size of the opening; only if the flanges were curved inwardly, so that the distance between their outer edges was less than the diameter of the compartment and of the coins to be stacked therein, could their resiliency or rigidity affect the lateral removability of the stacks. It would seem, therefore, that in requiring this differentiation from Holmes the examiner must have believed that some of these claims, as first amended, covered a resilient inwardly curved flanged device. And this was true as to claims 1 and 5, if the first amendment be given its literal and natural interpretation.

By the final amendment, the shape of the flanges and the resulting shape of the compartments as theretofore described were in no manner limited or affected. The opinion expressed in National Recording Safe Co. v. International Safe Co. (C. C.) 158 Fed. 824, on an application for preliminary injunction, that, in view of the file wrapper and contents, even claims 6 and 8, which were never amended, and which described the vertical flanges merely as "spaced apart to form compartments for the coins," must be limited to radial flanges, cannot be followed. Subsequently the defendant in that case acknowledged the larger scope and validity of the claims, and a final consent decree was rendered against it.

The claims in this patent are to be interpreted in the light of their history and of the art at the time of application. The inventor's state-

ments, made after he had assigned his letters patent, whether in the form of an affidavit in a lawsuit or otherwise, can have no bearing thereon. On the other hand, his application for another patent, made two years after the one on which the patent in suit was issued, while demonstrating that he then apprehended the value of the curved flange compartment, reflects no light on the interpretation of the patent in suit. That the inventor may not have grasped the full significance of his actual invention does not detract therefrom. At that time, he described the radially flanged compartment as the preferred form. Under the sand-molded process of casting then in general use, such a core could be more easily produced. Later, however, the die-molded casting obviated this difficulty. Doubtless, too, the lateral as well as vertical removability of the stack in such structure was deemed by him an advantage. Experience, however, has now demonstrated that this is more than compensated for in the curved flanged compartment, for in the latter, unlike the former, accidental knocks and jars will not readily disturb the stacks of coins after the casing has been removed.

Inasmuch, however, as the language of these claims clearly covers both the then preferred form and the later device, commercially adopted first by complainant and then by all of the defendants, and as we find no basis for a limitation thereof, we conclude that claims 1 and 5 must be held infringed by each defendant.

[2, 4] 2. Claims 2 and 6 of the second Fisher patent in suit, No. 990,534, and 1, 2, 3, and 5 of the fourth Fisher patent in suit, No. 1,072,709, relate particularly to the slot guards and their co-operating sockets in combination with the other elements of a portable savings bank. In the first Fisher patent, these were shown as round bolts and described as inwardly yielding plungers carried by the cover; in the second Fisher patent, they are described, in claim 2, as angular formed; in claim 6, as nonrotatable plunger formed with beveled end surfaces. In the fourth Fisher patent, the plungers are described as T-shaped. Two of three exhibits of Savings Loan & Trust Company's banks have, in combination with the other elements, these T-formed and therefore nonrotatable plunger slot guards with beveled outer ends, fully corresponding in shape, location, and mode of operation with those of the claims in suit. These must be held to infringe, if, as the District Court found, complainant's claims are valid.

While the improvement over the original Fisher device is not great, it is substantial, in that the slots are more securely protected by the new form of guard. And its adaptation to this kind of device in combination with the other elements would involve, in our judgment, at least some degree of inventive genius, even if the guard were identical in form with the Patterson latch, patented October 19, 1829, or the Hotchkiss latch, patented January 19, 1835. Priority, however, is claimed by defendant through the Stone patent, No. 1,011,521, under which it operated. This was applied for on January 7, 1911, and issued December 12, 1911, three months before Fisher's application that resulted in his patent No. 1,072,709. Without detailing the evidence, we are, however, satisfied therefrom that the complainant has

sustained the burden of clearly proving priority of invention; the evidence demonstrates that the Fisher oval safe with these T-shaped guards was put on the market in 1910, and thus anticipated Stone. The claims in question must therefore be held, not only valid, but infringed by certain of defendant Savings Loan & Trust Company's devices.

[5] 3. Claims 1, 2, and 5 of the fifth Fisher patent in suit, No. 1,073,847, and claim 6 of the third Fisher patent in suit, No. 990,535, likewise relate to the slot guards in combination with other elements. The form of slot guard described in the fifth Fisher patent was novel. Its utility was due to its simplicity, compactness, cheapness, and efficiency. The use of the bell crank form of guard and the resilient mounting reduces the elements essential to the operation of the slot guard from three to two. Validity is clear.

In defendant Bankers' Registering Safe Company's device the resilient arm or slot guard holder, being in the form of a piano wire, is carried by a nonresilient top plate. While there are thus three, instead of two, elements, the operation is identical. Claims 1 and 2 read practically directly thereon, and the long and short arms of defendant's guard, joined as they are by a web, is the full equivalent of the bent slot guard described in claim 5. These claims must be held infringed.

[3] Claim 6 of the third Fisher patent calls for pivotally mounted spring-actuated slot guards carried by the peripheral bearings with which the inner top plate is equipped, in combination with the other elements of the savings bank. The improvement is a very narrow one; a similar guard is to be found in the old single compartment safe. If its adaptation to the present combination involve invention, and if validity of the claim be assumed, its scope must be limited to the structure described; as defendant's guards are not in any true sense pivotally mounted, infringement is not established.

4. Claim 7 of the second Fisher patent in suit, No. 990,534, is specific as to details of the lock element in the combination. We concur in the finding of noninfringement. The fillet in Bankers' Registering Safe Company's device serves a different function and the bolt is not slidably mounted.

5. Claim 5 of this second Fisher patent describes specifically the relation of the name plate, the casing top, and the inner slot guard bearing plate as connected together by clinching lugs. Defendant W. F. Burns Company's device has no clinching lugs uniting all these parts. The name plate is attached to the case by the lugs which form the pivots for the safe handle. The invention is extremely narrow. The scope of the claims should be confined to the device as described. So interpreted, concededly there is no infringement.

6. The charge of infringement pro tanto of claims 2, 3, and 4 of the first Fisher patent by the Bankers' Registering Safe Company, because one of the coin compartments of its safe has a wide, open outer side cannot be sustained. Each of these claims clearly contemplates that, in the entire structure of the core, the compartment forming flanges shall be radial, and that the outer edges of each compartment shall necessarily be spaced apart more than the coin diameter.

The invention of these claims resides in the entire core; not pro tanto in one compartment thereof.

[6] 7. Though in a sense a pioneer patent in this specific art of multiple compartment portable savings banks, few of the Thompson devices were made. It was completely superseded by the Fisher device. Thompson's fourth claim alone is involved in each of these suits. Read in the light of the specifications and drawings and the prior art, one of the functions of the plate projections specified therein was to hold the assembled complete coin tubes in place; for, unlike the defendants, who in this followed Fisher, Thompson had no core. He gathered together into one structure a number of complete coin tubes. In the core and casing devices, in which the coin compartments are formed by flanges rising from a base, there are no such complete tubes, and consequently no such plate projections. In view of the totally different character of the structures, and of complainant's counsel's frank statement that there is room for difference of opinion concerning this claim, and assuming its validity, we add merely our concurrence in the views of the trial judge that it has not been infringed.

[7] 8. In so far as unfair competition is relied upon as a separate and distinct cause of action, the court was without jurisdiction both in the Bankers' Registering Safe Company Case and in the W. F. Burns Company Case, as there was no diversity of citizenship. U. S. Expansion Bolt Co. v. H. J. Kroncke Hardware Co., 234 Fed. 868, 148 C. C. A. 466, decided by this court April 18, 1916.

[8] If, however, in infringing upon plaintiff's patent rights, defendants have aggravated the damages by unfair competition in the sale of the very infringing articles any damages thus caused may be awarded in the accounting. Payson Manufacturing Co. v. Ludwigs, 206 Fed. 60, 124 C. C. A. 194. Without detailing the evidence, we are satisfied therefrom that the trial judge correctly held that the probable result of similarity of appearance, confusion, and deception, actually occurred in the Bankers' Registering Safe Company Case, and that in the Burns Company Case, neither actual nor probable deception or confusion was established.

[9] 9. Violation of a common-law trade-mark, by its use on the infringing article, may also be shown in aggravation of damages. In the Bankers' Registering Safe Company Case, the bill alleged a trademark in the word "Teller" and its employment on plaintiff's product, usually associated with some auxiliary word, such as "Traveling," "Home," "Savings," "Receiving," or "Automatic," and charged a violation thereof by the use of the words "Depositor's Teller" on the infringing device. The evidence showed registration in Illinois both of "Teller" and of "Traveling Teller" as trade-marks, and federal registration of "Traveling Teller" only.

Proof of actual use of the word "Teller" to designate generically plaintiff's safe, even though never alone, but always in association with one or the other qualifying word dependent upon the specific form of safe, was sufficient to establish a common-law trade-mark in the word "Teller." And the District Judge was clearly right in hold-

ing this word, as applied to portable bank safes, to be purely fanciful, and, however suggestive, in no sense descriptive of the device.

10. In claim 8 of the first Fisher patent in suit the lock element is more particularly specified than in claim 5; in claims 6 and 7, the elements of a central compartment formed by the walls uniting the inner edges of adjacent flanges, is added; in claim 7, the slot guards, too, are specified. The consideration of claims 1 and 5 disposes of the questions of validity and of the attempted limitation to radial flanges; Fisher's combination, including the central compartment, is of course none the less valid and unanticipated because the added element is not of itself novel.

We fully agree, too, that under the doctrine of Winans v. Denmead, 15 How. 330, 14 L. Ed. 717, neither the circular form of the base nor the central location of the bill compartment, neither of which were novel or vital, should restrict the claims to this precise description; the oval base and side bill compartment formed by the inner walls of some of the flanges do not enable defendants to escape infringement. And the lock element of defendant Bankers' Registering Safe Company's Case is fully covered by claim 8.

The defendant Savings Loan & Trust Company's safe, made under the Stone patent, 1,011,521, does not thereby gain any added protection. If it be an improvement upon, it is none the less an infringement of, Fisher's device. The changes, whereby the core is drawer form, the casing horizontally instead of vertically removable, the key-controlled bolt on the core with the bolt-engaging member on the casing, instead of the reverse location, are only in form and not in substance.

The differences in construction and operation between complainant's and the W. F. Burns Company safe, as clearly pointed out by Judge Sanborn, are likewise formal, and do not avoid infringement.

The decrees in each of these cases will be reversed, with directions to enter decrees in accordance with the views herein expressed. The original complainant will recover costs in all of the appeals and cross-appeals.