WASHINGTON NAT. BANK OF TACOMA v. ECKELS, Comptroller of the Currency, et al.

(Circuit Court, D. Washington, W. D. August 29, 1893.)

1. NATIONAL BANKS — APPOINTMENT OF RECEIVER BY COMPTROLLER OF THE CURRENCY.

The power vested in the comptroller of the currency by Act June 30, 1876, (19 Stat. 63,) authorizing him, whenever he becomes satisfied of the

insolvency of a national bank, to appoint a receiver, is discretionary; and his decision as to such insolvency, for the purpose of such an appointment, is final, and not reviewable by the court.

2. SAME—VOLUNTARY LIQUIDATION.
   The right to put a national bank in voluntary liquidation, given to stockholders by Rev. St. § 5220, does not affect the right of the comptroller to appoint a receiver under the act of June 30, 1876.

3. SAME.
   Nor does the provision of the act of 1876, providing that, after the receiver has had charge of the bank long enough to pay all its debts, the stockholders may select an agent to take charge of such assets as remain, limit the power of the comptroller to take action before the bank ceases to do a banking business.

4. SAME—CLOSING UP BUSINESS.
   Section 1 of the act of 1876, authorizing the appointment of a receiver by the comptroller to "close up" a national banking association, contemplates the liquidation and final winding up of the business of the bank, not the mere closing of the bank, and does not limit the power of the comptroller to take action before the bank has closed its doors.

In Equity. Bill by the Washington National Bank of Tacoma for an injunction to restrain James H. Eckels, the comptroller of the currency, and a bank examiner appointed by him as agent, from proceeding after the bank had, pursuant to a vote of more than two-thirds of its stockholders, gone into voluntary liquidation, to take possession of the assets of the bank for the purpose of putting the same in charge of a receiver. The defendant Charles Clary, bank examiner, interposed a plea in bar, alleging that the comptroller of the currency, after due examination, being satisfied that the bank was insolvent, had ordered him to take charge of the bank, for the purpose of turning the same over to a receiver, to be appointed pursuant to the act of June 30, 1876, (Supp. Rev. St., 2d Ed., 107.) Hearing on exceptions to the plea for insufficiency. Plea sustained.

Crowley & Sullivan, for complainant.

Wm. H. Brinker, U. S. Atty., and F. C. Robertson, Asst. U. S. Atty., for defendants.

HANFORD, District Judge, (orally.) In the case of the Washington National Bank against the comptroller of the currency, pending at Tacoma, I regard it as a great hardship that the comptroller of the currency should deem it necessary to interfere in the settlement of the business of the bank by the officers and means which have been chosen by the bank's stockholders, directors, and creditors, and which are satisfactory to them, especially in view of the uncontradicted averment in the bill that the bank is able to meet all of its obligations, and willing to do so, and intending to do so, and that it is proceeding as well as it can to liquidate,—that is, to pay,—and close up its business. Now, regarding it as a hardship, I have endeavored, in reflecting on the case, to bring my mind to the conclusion that the court may lawfully interfere by issuing an injunction to restrain the appointment of a receiver, but the result has not been satisfactory.

In 1876 congress passed a law which, in terms, gives the comptroller of the currency the right to appoint a receiver whenever he becomes satisfied, after an examination, that a national bank is insolvent. The power thus vested in the comptroller of the currency is discretionary, and I think the rule holds good in this case, as in others, that where the head of a bureau in one of the departments of the government is clothed with discretionary powers, and authority to investigate facts and act upon his conclusions, his conclusions as to the facts are final, and not reviewable by the courts; so that the decision of the comptroller of the currency in this case, that the bank is insolvent, is to be taken as a finality. It is equivalent to the fact, whether the bank is really insolvent or not, so far as to authorize the exercise of the comptroller's power to put the bank in the hands of a receiver. Section 5220, Rev. St., gives the stockholders the right, by a two-thirds vote, to put the bank in voluntary liquidation. But there the law, so far as it gives the stockholders or officers of the bank any rights, ceases. It simply declares that they may, by vote, go into voluntary liquidation, and then the duty devolves upon them to give certain notices,—give notice to the comptroller, and give notice to everybody by publication. But I am unable to find in that provision anything to control this later act of congress, vesting the comptroller with power to appoint a receiver to take charge of a national bank when he becomes satisfied that it is insolvent. The same statute of 1876 provides when the stockholders may choose an agent to take charge of the business of a bank in liquidation; that is, after the receiver has had charge of it long enough to pay all its debts, and after its debts have all been paid, then the stockholders can select an agent to take charge of what remains of the assets. Now, all that seems to indicate that the comptroller, as the head of the bureau having charge of the national banks of the United States, and representing the government, so far as it has any interest, and representing the creditors and stockholders, is vested with power to take charge of a bank, and appoint a receiver, whenever certain conditions exist, and I do not think that this power is limited to cases in which his action may be taken before the bank has ceased to do a banking business. The words "close up," used in the statute, mean the liquidation and closing up of the business of the bank, not the closing of the bank. It is evident from the manner in which these words are used that it relates to the final winding up of the business. All that the receiver is required to do, the only service he can render, is in transacting the business that has to be done after the bank is closed, and it certainly never was intended by the use of these words to indicate an intention to limit the power of the comptroller to taking action before the bank has closed its doors. These are my conclusions in the matter, and I shall therefore sustain the plea.