## TAYLOR v. AMERICAN NAT. BANK OF WICHITA FALLS, TEX., et al.

(District Court, N. D. Texas, Wichita Falls Division. December 3, 1924.)

### No. 129.

**1. Banks and banking ⬤⟹250(5) — Evidence held insufficient to prove fraud inducing purchase of bank stock.**

In action under Federal Reserve Act Dec. 23, 1913, § 23 (Comp. St. § 9689) and Rev. St. § 5220 (Comp. St. § 9806), to enforce shareholders' liability, by bank's officers and directors as bank's creditors, who had guaranteed bank's indebtedness to other bank, testimony *held* insufficient to prove fraud inducing purchase of stock.

**2. Banks and banking ⬤⟹248(1)—Purchaser of stock subject to stockholders' liability, notwithstanding fraud inducing purchase of stock.**

Subscription of stock in national bank, obtained by false representations, is not void, but only voidable, and shareholder, who permits name to be shown on books of bank as shareholder, is subject to stockholders' liability under Federal Reserve Act Dec. 23, 1913, § 23 (Comp. St. § 9689) and Rev. St. § 5220 (Comp. St. § 9806.

**3. Banks and banking ⬤⟹250(3)—Stockholders in national bank, being sued for stockholders' liability, cannot bring cross-action.**

In action against stockholders in national bank to enforce stockholders' liability under Federal Reserve Act Dec. 23, 1913, § 23 (Comp. St. § 9689) and Rev. St. § 5220 (Comp. St. § 9806), by a plaintiff who appears as trustee

for bank's creditors, cross-action by stockholders is not permitted.

**4. Banks and banking ☞248(1)—Stockholders' liability available to guarantors of bank's indebtedness to other bank.**

Liability of stockholders of national bank *held* available to guarantors of bank's indebtedness to other bank.

**5. Banks and banking ☞248(1)—Levy of assessment does not absolve shareholders from suit at instance of creditors.**

That Comptroller had previously levied assessment on shareholders of national bank did not absolve shareholders from suit to enforce stockholders' liability, at instance of creditors, under Federal Reserve Act Dec. 23, 1913, § 23 (Comp. St. § 9689) and Rev. St. § 5220 (Comp. St. § 9806).

**6. Banks and banking ☞248(5)—Married woman, holding stock in national bank, liable for assessments.**

Married woman, who held stock in national bank in her own right, under state law entitling her to so do, was liable for assessments in creditor's action, under Federal Reserve Act. Dec. 23, 1913, § 23 (Comp. St. 9689) and Rev. St. § 5220 (Comp. St. § 9806).

**7. Banks and banking ☞248(4) — One who was shown as shareholder on books of bank, and who voted stock, held liable in creditor's action to enforce stockholders' liability.**

One in whose name stock stood on books of national bank, who participated in stockholders' meetings on several occasions, and voted stock, and who was shown on bank's books as stockholder, and who voted stock when indebtedness was contracted, *held* liable in creditor's action to enforce stockholders' liability, under Federal Reserve Act Dec. 23, 1913, § 23 (Comp. St. § 9689) and Rev. St. § 5220 (Comp. St. § 9806), though a pledgee.

**8. Banks and banking ☞248(1) — National bank's settlement with debtor, who was stockholder, did not preclude enforcement of stockholder's liability against other stockholders.**

Settlement of national bank's claim against former stockholder for substantial sum did not preclude enforcement of stockholder's liability against all the stockholders in creditor's action under Federal Reserve Act Dec. 23, 1913, § 23 (Comp. St. § 9689) and Rev. St. § 5220 (Comp. St. § 9806).

In Equity. Action by Mrs. Ella D. Taylor, individually and as executrix and devisee under the will of T. J. Taylor, deceased, against the American National Bank of Wichita Falls, Tex., and its shareholders. Decree for plaintiff.

Bullington, Boone & Humphrey, of Wichita Falls, Tex., for plaintiff.

C. Kyron Walsh, of Wichita Falls, Tex., for defendant Emert.

Kay, Aiken & Kenley, of Wichita Falls, Tex., for other defendants.

Smoot & Smoot, of Wichita Falls, Tex., for intervening creditor.

ATWELL, District Judge. This suit is brought under the provisions of section 23 of the Federal Reserve Act of Dec. 23, 1913 (Comp. St. § 9689) and section 5220 of the United States Revised Statutes (Comp. St. § 9806), and is in the nature of a creditors' bill. Briefly, the bill alleges: That the American National Bank at Wichita Falls had a capital stock of $200,000. That early in the summer of 1921 it was necessary to pledge certain of its assets to the First National Bank of Wichita Falls for the realizing of sufficient cash to pay off its depositors. That before such an arrangement could be made the plaintiffs were compelled to become guarantors to the First National, which guaranty, among other things, provided that the paper that the First National was taking over for security for such advancements would be retaken by the guarantors, and cash turned over to the First National in its place, if the First National so demanded. Such contract of guaranty expressly reserved the liability of the shareholders of the American National. Shortly thereafter the American National voted to go into liquidation, it having arranged for its depositors' checks to be honored by the First National. That demand was made upon plaintiffs, guarantors, by the First National, that several hundred thousand dollars worth of the pledged paper should be taken up by plaintiffs and cash paid over in its stead, which was done. That losses much in excess of $200,000 resulted. They prayed for certain equitable relief in the way of a complete ascertainment of such losses, the value of securities, etc., and asked for judgment for a full assessment against each shareholder.

The defendants answered that the act of the plaintiffs in making a guaranty to the First National Bank was voluntary and not arising in the due course of the business of the American National Bank; that the shareholders had made a prior payment upon an assessment levied by the Comptroller of the Currency; that the directors and active officers of the bank fraudulently induced certain shareholders to purchase stock, and for that reason such shareholders would not be liable upon their assessment in an action brought by such directors and active officers as creditors. Certain shareholders asserted cross-actions against certain officers and directors as individuals; two of the shareholders pleaded coverture; one shareholder pleaded that he was a pledgee. Likewise it was asserted that one R. M. Waggoner was at one time a director, and that the bank had settled with him. The defendants also sought to exact information concerning the condition of the liquidated bank, the value

of its assets, the amount of its liabilities, and a complete disclosure of its affairs.

A master was appointed, who worked out the details of the inside affairs of the bank, so far as its liabilities and assets and its expenditures were concerned. Upon hearing an exception was sustained to the cross-actions. The parties stated in open court that they had agreed, after the completion of the master's report, that a sale of the existing assets of the bank should be made, and that the same was made, and that $50,000 in cash was realized. This eliminated any controversy over the amount of assets, or amount of liabilities, or correctness of expenditures, etc. This report and agreement show that the amount of liabilities was largely in excess of $200,000, after deducting the $50,000 received from the sale of the assets.

1. The testimony shows that in the fall of 1920 a national bank examiner discovered that the American National was insolvent, and its capital stock impaired. He went to a Mr. Kell, who resided in Wichita Falls, and who was a member of the Federal Reserve Board, and acquainted him with the situation (Mr. Kell having no knowledge of the condition of the bank, and having no connection therewith whatsoever), and solicited him to avert such a financial catastrophe as would follow the closing of the bank, which had at that time deposits greatly in excess of $1,000,000. The examiner advised Mr. Kell that it would be necessary to take certain paper out of the bank, and to resubscribe for the entire capital stock of $200,000. Mr. Kell was a substantial and a philanthropic citizen, interested in the good name of Wichita Falls, and he called into conference a score or more of other citizens, and they arranged to, and did in fact, raise $200,000 in cash and put it in the bank. This $200,000 was to be used for taking the stock of any old stockholder who did not see fit, or who was not able, to pay the assessment of 100 cents. There were many who came within this category, and as a result Mr. Kell took about $20,000 of the stock, and several other gentlemen thus became stockholders. They made no personal examination of the paper, but relied upon the information furnished by the examiner, and by a committee of expert bankers chosen from the other banks in the city, who took from the bank and charged off such paper as they thought worthless, so that when they had finished they represented that the bank was solvent, with unimpaired capital. The old active officers of the institution

were displaced, and new officers took charge, some of whom drew no salary. The bank continued in business from then until the summer of 1921, when it arranged with the First National to take over the payment of its depositors, as stated in the first part of this opinion. In the meantime, and during the time from the fall of 1920 to about April 10, 1921, some of the defendants had purchased stock, believing that the bank was all right, and that its new officers would make a creditable and dividend-paying institution out of it.

Considerable testimony was introduced tending to show that Wichita Falls was in the oil belt of Texas, and that its banking institutions dealt with refineries and men and concerns interested in the oil industry, and that a large part of its paper had been executed by such customers; that some time in the early winter of 1921 oil prices and properties became greatly depressed; that oil decreased from $3 or $4 per barrel to $1 per barrel; that leases which were thought to be valuable prior to that time became almost worthless, and that the general liquidation through which the country at large went also affected the bank; that the bank, which was solvent in the fall of 1920, became extended and in financial peril by June or July of 1921.

There was testimony, both pro and con, as to the worth of large amounts of paper which was found to be in the bank. There was some testimony that Officer Taylor, now deceased, the consort of the plaintiff Taylor, phoned a personal friend that the bank was all right and that that friend bought $2,000 of the stock. There was also testimony of two or three other stockholders that representations had been made to them concerning the solvency of the bank. Such officers, or directors, whom it was claimed had made such representations, are some of the plaintiffs.

[1] 2. Such testimony was not sufficiently impressive to fix any actual fraud. The facts and testimony preclude any finding of constructive fraud. The shareholders who assert either actual or constructive fraud acquired their stock after the assessment was made by the Comptroller, and they participated in the stockholders' meetings on January 11, 1921; also in another stockholders' meeting in April, 1921, when it was voted to increase the capital stock from $200,000 to $700,000; also in a meeting on or about October 1, 1921, when liquidation was voted, and when there was the approval of the resolution of the board of direc-

tors in the assignment of the assets to the First National out of which guaranty arose. Each of them, if I am not mistaken, were depositors in the institution and were able to withdraw such deposits by reason of the arrangements with the First National.

[2] Even if a subscription of stock be obtained by false representations which go to the financial condition of the bank, that would not make the contract void, but only voidable, and the shareholder becomes liable to such creditors as become such while he permits his name to be shown on the books of the institution as a shareholder. The liability of the nation's banks and bankers would rest upon a false foundation, if the stockholder were allowed to assert, upon being called to account by a creditor of his institution, that he himself became a stockholder by reason of fraud that was practiced upon him by some one associated with the institution. The following authorities throw varying shades of light upon the perils that a stockholder assumes, and conclusively show that there is very little immunity or defense: Lantry v. Wallace, 182 U. S. 549, 21 S. Ct. 878, 45 L. Ed. 1218; Ryan v. Mt. Vernon National Bank, 224 F. 429, 140 C. C. A. 123; Scott v. Latimer, 89 F. 843, 33 C. C. A. 1; Scott v. Deweese, 181 U. S. 202, 21 S. Ct. 585, 45 L. Ed. 822.

[3] A cross-action by stockholders, over against plaintiffs, who appear as trustees for creditors, is not permitted. Geneva Furniture Co. v. Karpen, 238 U. S. 254, 35 S. Ct. 788, 59 L. Ed. 1295; U. S. Bolt Co., v. Kroncke Hardware Co., 234 F. 868, 148 C. C. A. 466; Foster's Federal Practice, vol. 2, p. 1134; rule 30, Equity Practice.

[4] 3. The assertion that the plaintiffs may not recover, because they were not legally bounden to make any guaranty to the First National Bank, and that therefore it was a voluntary burden, for which they may not charge defendants, I think, is ruled by the cases of Hightower v. American National Bank, 263 U. S. 351, 44 S. Ct. 123, 68 L. Ed. 334, and Wyman v. Wallace, 201 U. S. 230, 26 S. Ct. 495, 50 L. Ed. 738, against the defendants. In the first-mentioned case the Supreme Court said:

"The remaining contention is that the debt sought to be enforced was created during the process of liquidation, and therefore is not one for which the shareholders are liable. The premise is faulty. The debt arose from the contract, and represents moneys advanced in excess of what was realized from the assets. * * * There was power to make the contract. The purpose was not to obtain money to engage in new business, but simply to change from many creditors to one. Nor was the contract made in derogation of the rights of the shareholders. One of its purposes was to subserve their interests, and this was recognized when they ratified and confirmed it."

See, also, Poppleton v. Wallace, 201 U. S. 245, 26 S. Ct. 498, 50 L. Ed. 743; King v. Pomeroy, 121 F. 287, 58 C. C. A. 209. That a guarantor has the same rights as the institution was held in People's Bank v. National Bank, 101 U. S. 181, 25 L. Ed. 907; First National Bank v. Armstrong (Tex. Civ. App.) 168 S. W. 873.

[5] 4. That the Comptroller had previously levied an assessment does not absolve the shareholders from a suit at the instance of the creditors has been determined in Delano v. Butler, 118 U. S. 634, 7 S. Ct. 39, 30 L. Ed. 260; Commercial National Bank v. Weinhard, 192 U. S. 244, 24 S. Ct. 253, 48 L. Ed. 425; Studebaker v. Perry, 184 U. S. 258, 22 S. Ct. 463, 46 L. Ed. 528.

[6] 5. Coverture was pleaded by Mrs. Carrigan, and by Mrs. Fine. In each instance the husband purchased the stock and gave it to the wife. It was carried in the name of the wife upon the books of the institution. This creates a liability against her by force of the federal law, regardless of her freedom from it under common law. If a married woman is, by the laws of the state in which she resides, capable of holding stock in a national bank in her own right, she is liable for assessments rendered thereon. In the case of Keyser v. Hitz, 133 U. S. 138, 10 S. Ct. 290, 33 L. Ed. 531, it was said: "The law annexes her liability of its own force and no capacity to act on her part is required." See, also, Christopher v. Norvell, 201 U. S. 216, 26 S. Ct. 502, 50 L. Ed. 732, 5 Ann. Cas. 740.

[7] 6. Defendant Fine also defends on the ground that he was the pledgee of 30 shares. The facts show that the stock was in his name on the books, and that he participated in stockholders' meetings upon several occasions and voted the stock. Finally the stock was in his name at the time he voted for the liquidation and the making of the contracts which are the basis of this suit. This makes him liable in an action of this sort. Ohio Valley National Bank v. Hulitt, 204 U. S. 161, 27 S. Ct. 179, 51 L. Ed. 423; Rankin v. Fidelity Insurance & Trust Co., 189 U. S. 241, 23 S. Ct. 553, 47 L. Ed. 792.

[8] 7. The settlement of the liability of R. M. Waggoner for the substantial sum of

$30,000, he having been a stockholder at one time, when it was alleged certain bad paper worked its way into the bank, is claimed to have the effect of liberating the defendants from their liability herein. The contention almost answers itself. To approve such reasoning would be to authorize the directors or managing officers of an institution to liberate a stockholder from his statutory liability when asserted by creditors. Scott v. Latimer, 89 F. 843, 33 C. C. A. 1. The settlement arose out of a lawsuit that the bank had brought against Waggoner on his liability independent of this creditors' bill, and not connected in any way with it. There was a substantial defense urged, and the attorneys for the bank, as well as the attorneys for the defendant, Waggoner, in their respective capacities and discretions, agreed upon a compromise of the litigation. There was as much right to compromise that as any other claim that the bank held.

Feelings of regret that small stockholders, or comparatively small shareholders, should be required to respond again, must not obscure the importance of keeping throughly alive the responsibility of those who own and run national banks to the public at large, who may become creditors thereof.

A decree will be drawn for the plaintiffs.