### HAMILTON v. SCHEETS.

No. 41432.

District Court, N. D. Illinois, E. D.

April 7, 1934.

Mighell, Allen & Latham, of Aurora, Ill., for plaintiff.

Cassels, Potter & Bentley, of Chicago, Ill., Frank R. Reid and Plain & Plain, all of Aurora, Ill., for defendant.

HOLLY, District Judge.

This is an action by the receiver of the First National Bank of Aurora to enforce the liability of defendant as a stockholder of said bank. In the amended declaration plaintiff sets out his appointment as receiver of said bank by the comptroller, the determination of the comptroller that it would be necessary to enforce the personal liability of the shareholders of the bank in order to pay the debts thereof, an order of assessment upon the

shareholders and the demand of the comptroller upon each shareholder, including defendant, for payment. Defendant in his third amended pleading has filed two pleas, the first being the plea of the general issue. In the second plea defendant sets up several defenses some of which are equitable in their nature.

To this second plea plaintiff has demurred but defendant contends that the plea being equitable in nature a demurrer does not lie, a motion to strike being the only proper method of attack, citing Duell v. Greiner (D. C.) 15 F.(2d) 726. In that case both a demurrer and motion to strike were filed, and the court held that a demurrer not being applicable to a plea setting up equitable defenses, it had considered the motion to strike instead. It is true that a motion to strike is the proper method of testing the sufficiency of an equitable plea, but if a demurrer is filed it may be treated as a motion to strike, and the demurrer will be so treated in this case.

The first matter of defense set up in the second plea is a contract between the First National Bank of Aurora, the bank involved in this case, hereafter and in the contract referred to as the Old Bank and the First National Bank in Aurora, hereafter referred to as the New Bank. By the terms of this contract, dated July 30, 1931, and ratified by the shareholders September 26, 1931, and which recited that the condition of the Old Bank was unsatisfactory, its capital stock and surplus fund impaired and an assessment pending which was considered to be dangerous to the bank, the two banks agreed that the Old Bank should transfer certain of its assets to the New Bank and execute and deliver its note or notes to the New Bank for the par value of the difference between the assets of the Old Bank accepted by the New Bank and the capital stock, surplus, and reserves of the Old Bank, such note or notes to be secured by transfer of the remaining assets of the Old Bank to certain trustees who were given authority to convert such assets into money, to apply the proceeds in payment of such note or notes, and distribute the remainder among the shareholders of the Old Bank. In consideration of such transfer of assets and the giving of the note or notes the New Bank assumed and agreed to pay the liabilities of the Old Bank which appeared upon the general statement of the Old Bank as of July 20, 1931, except the liability for circulation notes, the liabilities not shown on the general ledger of the Old Bank as of the close of business on the day aforesaid, and the liability to shareholders as such.

There is no averment in the plea that the note or notes mentioned in the contract to be given by the Old Bank to the New Bank (and in the brief filed by defendant it is admitted that such note or notes were given) have ever been paid. They are still outstanding obligations of the Old Bank. Defendant seeks to avoid the effect of this fact by the allegation that the note or notes given by the Old Bank did not evidence any indebtedness of the Old Bank to the New Bank for the reason that the trusteed assets of the face value of over $1,000,000 were taken by the New Bank as full payment of the difference in the amount between the liabilities and assets of the Old Bank assumed by the New Bank and that said purported note or notes were merely given as a memorandum of the amount of the assets when liquidated. But the terms of the contract do not warrant such a construction. The trusteed assets were merely collateral security to said note.

It is further averred in the plea that it was not the intention or purpose of the officers of the Old Bank that the "agreement should constitute any liability of the shareholders of the Old Bank for the payment of said note," and that it was represented by the officers of the both banks to the shareholders of the Old Bank that the agreement relieved the shareholders and the shareholders relying on such representations ratified the agreement. But the purpose and intention of the officers of the Old Bank is immaterial, and the shareholders cannot be relieved from liability by oral representations varying, or attempting to vary or change the plain terms of the written agreement.

It appearing then that the Old Bank had an outstanding liability at the time it was taken over by the comptroller and the present suit instituted, defendant cannot question the necessity of an assessment or the amount thereof as determined by the comptroller. This is settled by a long line of decisions commencing with Kennedy v. Gibson, 8 Wall. 498, 19 L. Ed. 476, and Bushnell v. Leland, 164 U. S. 684, 17 S. Ct. 209, 41 L. Ed. 598.

A case quite similar to the case at bar is Crawford v. Gamble (C. C. A.) 57 F.(2d) 15. There the officers and directors of the First National Bank of Hazard, Ky., transferred its assets to the First National Bank in Hazard, the contract by which the transaction was effected being quite similar to the one in the instant case. The comptroller having taken possession of the Old Bank, levied an assessment and brought suit against a

shareholder to recover the amount of the assessment against him. The shareholder defended on the ground that the transaction was not ratified by the shareholders of the Old Bank and the note given by the Old Bank was therefore not a valid obligation; that the assets of the Old Bank transferred to the New Bank were much greater in value than the liabilities of the Old Bank; and that to induce the comptroller to sue the stockholders of the Old Bank the officers and directors of the two banks fraudulently concealed the real condition of the Old Bank. The court held that defendant could not question the insolvency of the Old Bank, nor the amount of the assessment nor the necessity therefor, these questions having been conclusively determined by the comptroller. Further, the court held that defendant was not entitled to a judicial ascertainment of whether the note given by the Old Bank to the New Bank was a valid obligation for which an assessment might be made for this would be the equivalent of a purely collateral attack upon the assessment already made by the comptroller. To the same effect is Wannamaker v. Edisto Nat. Bank (C. C. A.) 62 F. (2d) 696, another case in which the facts are quite similar to those in the case at bar.

■ Defendant attempts to distinguish this case from those which have held that the determination of the comptroller as to the insolvency of the bank, the necessity for an assessment, and the amount thereof may not be questioned by a shareholder. Counsel say that in the present case the assessment of the comptroller "is the result of fraud, error or mistake of law." But the only averments as to fraud, error, or mistake of law are that the comptroller did not acquaint himself with all the facts of the transaction by which the assets of the Old Bank were transferred to and its assets assumed by the New Bank, "and as a consequence his assessment was the result of error or mistake of law (presumably the pleader intended to say mistake of fact) or, if he did know all of the said facts then his assessment is an act of fraud upon this defendant." But this is a mere conclusion of the pleader. And if the facts set up do not constitute a defense, an allegation by the pleader that the comptroller has acted upon a mistake of fact or fraudulently are of no avail.

■ It is further averred in the plea that after the Old Bank ceased to do business, a meeting of the stockholders was held and at that meeting it was voted to put the bank into voluntary liquidation as provided in U. S. Code, title 12, § 181 (12 USCA § 181), with the New Bank as liquidating agent, and that the Old Bank continued in liquidation until the comptroller appointed a receiver who thereupon took over the assets of the Old Bank then in the possession of the New Bank and has continued to hold the same and has collected and realized moneys from said assets, and is continuing to collect moneys on such assets which belong to defendant and all other stockholders of the Old Bank, and that said receiver should account to defendant and all other shareholders of the Old Bank.

While section 181, title 12, U. S. Code (12 USCA § 181), does authorize a banking association by vote of the stockholders owning two-thirds of the stock to go into voluntary liquidation, it can hardly be held that it was the intention of Congress in authorizing such liquidation to deprive the comptroller from taking over the affairs of the association if, in his opinion, it is insolvent. Washington National Bank v. Eckels (C. C.) 57 F. 870.

■ Further averments of the plea are that the comptroller has taken into his possession the First American Safe Deposit Company, an Illinois corporation, all the stock of which was and is held in trust for the benefit of defendant and other shareholders of the First National Bank of Aurora, and that he is collecting the rents and profits of said company which belong to defendant and said other shareholders and of which this court should require an accounting; that plaintiff is receiver of both the Old and New Bank and that the interests of the two are antagonistic in that there has been a commingling of the funds of the New Bank and the trusteed assets of which this court should require an accounting; that plaintiff, as receiver of both banks, is representative of both vendor and vendee in the transaction between the Old Bank and the New Bank and should be removed from one or both positions.

But none of these things, if true, constitute a defense to this suit. If the receiver is not properly administering the affairs of the Old Bank, the only one in which defendant is interested, that matter may be adjudicated when the receiver files his accounts. In the meantime defendant under the repeated decisions of the courts must pay the assessment levied by the comptroller.

■ Lastly defendant alleges that the receiver has no authority to maintain an action to enforce the shareholder's liability because he, the receiver, is not a creditor of the bank as required by U. S. Code, title 12, § 65 (12 USCA § 65). But the receiver does not bring this action under that section of the Banking

Act, but by virtue of the authority of section 191 (12 USCA § 191).

The matters of fact set up in this second plea do not constitute a good defense to plaintiff's action and the demurrer will be sustained.

This action was commenced prior to January 1, 1934, and at a time when the Illinois Practice Act of 1907 was in force in this state. Under the provisions of section 55 of that act (Smith-Hurd Rev. St. Ill. 1933, c. 110, § 55), plaintiff filed an affidavit of claim and defendant filed with his pleas an affidavit of merits. Plaintiff has moved to strike the affidavit on the ground that defendant did not set up a defense. Defendant says that as his second plea sets up an equitable defense, an affidavit of merits is not required. Possibly the affidavit is not necessary where the plea does actually set up an equitable defense, but here it does not. The affidavit contains the same statement of facts as is set up in the plea and those facts do not constitute a defense. The affidavit will be stricken. The same order will be entered in cases Nos. 41505, 41667, 41604, 41479, and 41431.