## STEPHENS v. HAMILTON, and seven other cases.

Nos. 5351, 5352, 5353, 5354, 5355, 5356, 5357, 5358.

Circuit Court of Appeals, Seventh Circuit.
Jan. 17, 1936.

Frank R. Reid and John G. Plain, both of Aurora, Ill., for appellants.

Olney C. Allen and John T. Matthews, both of Aurora, Ill., for appellee.

Before EVANS and SPARKS, Circuit Judges, and WILKERSON, District Judge.

SPARKS, Circuit Judge.

Appellee as receiver of the First National Bank of Aurora filed suits against appellant and other stockholders of the bank to enforce their stockholders' liability. Judgment was rendered against all the defendants in the amount of $100 for each share of stock owned by each, plus interest from the date of demand. From those judgments these appeals were taken. On motion of counsel for all the appellants this court ordered that only the record of the case of Mangan should be printed, and that it should stand as the record in all the appeals, and that all should be consolidated for hearing. One opinion was rendered by the District Court, in the case of Hamilton v. Scheets, reported in 6 F.Supp. 824. We refer to that opinion since it appears that the pleadings and the facts in all the cases were identical, although that particular case is not among the group appealed.

The first group of errors assigned has to do with the pleadings in the case. With his declaration the receiver filed an affidavit of claim setting out his appointment by the comptroller, the determination of the comptroller that it would be necessary to enforce the personal liability of the shareholders of the bank in order to pay its debts, an order of assessment upon the shareholders, the demand upon each, including appellant, for payment, and the failure of appellant to pay any part of the claim. The affidavit further alleged that appellant was the owner of twelve shares of the stock of the bank, and that there was due the receiver the sum of $1200 with interest from the date of demand. To this declaration and affidavit appellant filed the general issue, a special plea, and an affidavit of merits. Several of the defenses set up in the special plea were equitable in nature. Appellee demurred to this plea and moved to strike the affidavit of meritorious defense. His demurrer was sustained and his motion to strike the affidavit was granted.

Appellant first contends that since his special plea raised equitable issues it could not be reached by a demurrer, relying upon the case of Duell v. Greiner (D.C.) 15 F. (2d) 726. As to this, the District Court ruled that although a motion to strike is the proper mode of testing the sufficiency of an equitable plea, nevertheless, if a demurrer is filed, it may be treated as a motion to strike, and we think there was no error in his treatment of it as such. United States v. Mackey (C.C.A.) 216 F. 126; Thome v. Lynch (D.C.) 269 F. 995. However, appellant argued that whether the demurrer be considered as such or as a motion to strike, it admits all facts well pleaded, hence he was entitled to have his pleas considered as though set up in a bill in equity. A perusal of the opinion of the lower court convinces us that his plea received such consideration, and it was only upon its finding that none of the averments of the plea, even if true, constituted a defense to the suit that the court sustained the demurrer.

We adopt the analysis of the District Court as to the plea:

"The first matter of defense set up in the second plea is a contract between the First National Bank of Aurora, the bank

involved in this case, hereafter and in the contract referred to as the Old Bank and the First National Bank in Aurora, hereafter referred to as the New Bank. By the terms of this contract, dated July 30, 1931, and ratified by the shareholders September 26, 1931, and which recited that the condition of the Old Bank was unsatisfactory, its capital stock and surplus fund impaired and an assessment pending which was considered to be dangerous to the bank, the two banks agreed that the Old Bank should transfer certain of its assets to the New Bank and execute and deliver its note or notes to the New Bank for the par value of the difference between the assets of the Old Bank accepted by the New Bank and the capital stock, surplus, and reserves of the Old Bank, such note or notes to be secured by transfer of the remaining assets of the Old Bank to certain trustees who were given authority to convert such assets into money, to apply the proceeds in payment of such note or notes, and distribute the remainder among the shareholders of the Old Bank. In consideration of such transfer of assets and the giving of the note or notes the New Bank assumed and agreed to pay the liabilities of the Old Bank which appeared upon the general statement of the Old Bank as of July 20, 1931, except the liability for circulation notes, the liabilities not shown on the general ledger of the Old Bank as of the close of business on the day aforesaid, and the liability to shareholders as such.

"There is no averment in the plea that the note or notes mentioned in the contract to be given by the Old Bank to the New Bank (and in the brief filed by defendant it is admitted that such note or notes were given) have ever been paid. They are still outstanding obligations of the Old Bank. Defendant seeks to avoid the effect of this fact by the allegation that the note or notes given by the Old Bank did not evidence any indebtedness of the Old Bank to the New Bank for the reason that the trusteed assets of the face value of over $1,000,000 were taken by the New Bank as full payment of the difference in the amount between the liabilities and assets of the Old Bank assumed by the New Bank and that said purported note or notes were merely given as a memorandum of the amount of the assets when liquidated. But the terms of the contract do not warrant such a construction. The trusteed assets were merely collateral security to said note.

"It is further averred in the plea that it was not the intention or purpose of the officers of the Old Bank that the 'agreement should constitute any liability of the shareholders of the Old Bank for the payment of said note,' and that it was represented by the officers of both the banks to the shareholders of the Old Bank that the agreement relieved the shareholders and the shareholders relying on such representations ratified the agreement. But the purpose and intention of the officers of the Old Bank is immaterial, and the shareholders cannot be relieved from liability by oral representations varying, or attempting to vary or change the plain terms of the written agreement."

We think the District Court was correct in this ruling, and also in holding that since it appeared that the Old Bank had an outstanding liability at the time it was taken over by the comptroller and the suits here involved started, appellant could not question the necessity of an assessment or the amount thereof as determined by that officer. See Forrest v. Jack, 294 U.S. 158, 55 S.Ct. 370, 79 L.Ed. 829, 96 A.L.R. 1457, and cases there cited as to this point. That the determination of the comptroller as to the necessity and amount of the assessment is conclusive appears to be too well settled to require further citation of authorities. In his reply brief appellant seeks to distinguish his case from Crawford v. Gamble (C.C.A.) 57 F.(2d) 15, and other cases relied upon by appellee as to this issue on the ground that in all of these cases a debt was admitted and that the defense attempted to be pleaded sought to avoid it on other grounds, whereas in the case at bar, it is alleged that there were no debts of the Old Bank and that the assessment of the comptroller was the "result of fraud, error or mistake of law upon the part of the said Comptroller, in that he did not acquaint himself with all the facts as hereinabove set forth (referring to the facts as to the agreement described above.)" As to this, we think the court correctly ruled that this was a mere conclusion of the pleader, and that if the facts set up did not constitute a defense, an allegation by the pleader that the comptroller had acted upon a mistake of fact or fraudulently could be of no avail.

Appellant further pleaded that after the Old Bank ceased to do business, at a meeting of its stockholders it was decided to put the bank into voluntary liquidation as provided by 12 U.S.C.A. § 181, with the

New Bank as liquidating agent, and that such liquidation continued until a receiver was appointed by the comptroller, which receiver took over all the assets belonging to the Old Bank then in the possession of the New Bank as liquidating agent and of the trustees, and that as receiver appellee has collected money which properly belonged to the stockholders of the Old Bank, for which he should be compelled to account. Section 5220 of the Revised Statutes (12 U.S.C.A. § 181) permits any association to go into liquidation and be closed by the vote of its shareholders owning two-thirds of its stock. We agree with the lower court, however, that it could hardly be held that it was the intention of Congress in authorizing such liquidation to prevent the comptroller from taking over the affairs of the association if, in his opinion, it was insolvent. Such was his finding here, and we think it was conclusive. See Washington National Bank v. Eckels (C.C.) 57 F. 870.

◼ Appellant further urged that an action to enforce an assessment to pay creditors should have been brought by a creditor rather than by the receiver, citing 12 U. S.C.A. §§ 65 and 181. Section 65 provides that whenever a bank shall have gone into liquidation under the provisions of section 181, the individual liability of the shareholders may be enforced by any creditor by bill in equity, in the nature of a creditor's bill. In effect, the argument of appellant means that such mode of recovering against a shareholder is exclusive. We do not agree with this contention. We think that the lower court correctly ruled that the receiver could maintain his action by virtue of the authority of section 191 which provides: "Whenever the comptroller shall become satisfied of the insolvency of a national banking association, he may, after due examination of its affairs, * * * appoint a receiver who shall proceed to close up such association, and enforce the personal liability of the shareholders, as provided in section 192." We agree with the reasoning of the court in United States National Bank of La Grande v. Pole (D.C.) 2 F. Supp. 153, 159: "The fact that voluntary liquidation has been commenced and gone on for some time will not prevent the Comptroller from exercising the functions prescribed by the statute. If such were the case, banks which found matters tightening up would go into voluntary liquidation, sell the assets, and relieve their stockholders

of liability. The plaintiff still remains a national banking association subject to all the statutory powers of the Comptroller." See, also, Liberty National Bank v. McIntosh (C.C.A.) 16 F.(2d) 906; Washington National Bank v. Eckels, supra.

◼ In addition to his demand for an accounting of assets alleged to have been wrongfully intermingled by appellee as receiver of both the Old Bank and the New Bank, appellant also demanded an accounting of all funds alleged to have been collected as rents and profits of the First American Safe Deposit Company, an Illinois corporation, the entire stock of which was alleged to be held in trust for the benefit of all the shareholders of the Old Bank. He relied upon these demands for accounting as affirmative relief entitling him to a separate trial of the equitable issues prior to the determination of the legal issues of the case. As to this, the court held that it was no defense to the claim involved in this case, and that: "If the receiver is not properly administering the affairs of the Old Bank, the only one in which defendant is interested, that matter may be adjudicated when the receiver files his accounts. In the meantime defendant under the repeated decisions of the courts must pay the assessment levied by the comptroller." We agree with this ruling. We also agree with the argument of appellee that the statute upon which appellant relies as entitling him to equitable relief gives him no such right under the facts here presented. The statute in question provides as follows: "In all actions at law equitable defenses may be interposed by answer, plea, or replication without the necessity of filing a bill on the equity side of the court. * * * Equitable relief respecting the subject matter of the suit may thus be obtained by answer or plea. In case affirmative relief is prayed in such answer or plea, the plaintiff shall file a replication." Jud.Code § 274b, 28 U.S.C.A. § 398. The subject matter of this suit is the assessment against shareholders and the claim based thereon. Such assessment is not subject to collateral attack. We do not understand that the conclusive effect of the comptroller's determination may be avoided by an attack on the receiver and a demand for an accounting of him. Therefore, there was no issue of affirmative equitable relief to be tried prior to the determination of the legal issues. This also disposes of appellant's contention that appellee should have filed a

replication, since, if the former were not entitled to the affirmative relief prayed, there could be no necessity for answering his demand.

Upon sustaining appellee's demurrer to the special plea, the court granted his motion to strike appellant's affidavit of meritorious defense and thereupon rendered judgment on appellee's affidavit of claim without hearing any evidence. This was done in accordance with section 55 of the Illinois Practice Act then in effect (Smith-Hurd Ann. St. c. 110 Appendix, § 55, Cahill's Illinois Revised Statutes 1931, chapter 110, § 55) which provides as follows: "If the plaintiff in any suit upon a contract, express or implied, for the payment of money, shall file with his declaration an affidavit showing the nature of his demand, and the amount due him from the defendant, after allowing to the defendant all his just credits * * * if any, he shall be entitled to judgment, as in case of default, unless the defendant, or his agent * * * shall file with his plea an affidavit, stating that he verily believes the defendant has a good defense to said suit upon the merits to the whole or a portion of the plaintiff's demand, and specifying the nature of such defense, and if a portion specifying the amount (according to the best of his judgment and belief)."

Appellant contends that this statute has no application to the case at bar for the reason that a stockholder's liability is of statutory rather than contractual origin, hence no affidavit of merits was required, and the court had no right to decide the case on the appellee's affidavit of claim without hearing any evidence. The record does not indicate that this objection was raised before the trial court. On the contrary, appellant seems to have acquiesced in the theory of appellee that the case was one where the statute was applicable, and acquiescing, filed an affidavit of merits. He can not now be allowed to complain because the court decided the case on the basis and theory on which it was presented, namely, that the section of the Illinois Practice Act relating to the filing of affidavits of claim and meritorious defense was applicable. In Orsinger v. Consolidated Flour Mills Co., 284 F. 224, 226, this court said as to a similar contention: "Defendant also attacks the amount awarded and the method followed by the court in reaching that sum. The court fixed the amount without submitting the issue to a jury, or so it is claimed,

receiving any oral evidence to support plaintiff's claim. Neither party called for a jury. Neither offered any evidence. Under the Illinois practice the court could enter judgment for the amount set forth in the affidavit, or it could call for additional proof of the amount due. [Citing cases.]"

In Stauber v. Stauber, 217 Ill.App. 365, 374, the court said: "Under the statute above quoted [section 55 of the Illinois Practice Act] it was not necessary that appellee offer any proof after the plea was stricken from the files, except upon the matter of computation. New York National Exchange Bank v. Reed, 232 Ill. 123 [83 N.E. 548]; Cramer v. Illinois Commercial Men's Ass'n, supra [260 Ill. 516, 103 N.E. 459]; Braidwood v. Weiller, supra [89 Ill. 606]."

The judgments are affirmed.