**ABEL et al. v. MUNRO et al.**

**No. 8476.**

District Court, E. D. New York.
April 26, 1939.

Edwin V. Hellawell, of New York City, for defendants for the motion.

Abraham Fishbein, of New York City, for plaintiffs, opposed.

CAMPBELL, District Judge.

This is a motion made by the defendants to dismiss the complaint on the following grounds:

1. That the complaint fails to state a claim upon which relief can be granted.

2. That the complaint shows upon its face that the levying of the stock assessment by the Comptroller of the Currency on the stockholders of the National Bank of Ridgewood in New York, the collection of which assessment is sought to be restrained, was done in pursuance of the exclusive administrative jurisdiction, authority, discretion and judgment of the Comptroller of the Currency vested in him by law, and to dismiss the bill of complaint upon such other and further grounds and reasons as will be apparent on the face thereof.

The motion is based upon the complaint and bill of particulars.

Under Rule 12(e) of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c, it is provided "A bill of particulars becomes a part of the pleading which it supplements".

The bill of particulars, however, does not supercede the complaint, but limits it, and makes its allegations more definite and certain.

This action was brought to enjoin defendants from enforcing a stock assessment on the stockholders of the National Bank of Ridgewood in New York, which will hereinafter be referred to as "Ridgewood Bank".

Prior to the 29th day of August 1931, the Ridgewood Bank conducted a banking business in Ridgewood, Queens County. On that day it had deposit and other liabilities amounting to $1,172,757.36. The capital of said Ridgewood Bank was $200,000 represented by 2,000 shares of stock at the par value of $100 each.

The Board of Directors and more than two-thirds of the stockholders decided that it would be advantageous and beneficial to the Ridgewood Bank, its shareholders and all other interested parties, to discontinue banking operations and liquidate, and it was agreed between the Ridgewood Bank, acting through its officers, pursuant to the direction of the Board of Directors and more than two-thirds of the stockholders, and the Richmond National Bank of New York, hereinafter called the "Richmond Bank", that the book liabilities of the bank to depositors and creditors which were specifically set forth (and which did not include liability of stockholders), be assumed by the Richmond Bank in consideration of such assumption of liability by the Richmond Bank, the Ridgewood Bank executed and delivered its note, in the amount of $1,172,757.36 which was the exact amount of its liabilities assumed by the Richmond Bank, and assigned to Richmond Bank all of its assets as collateral security to said note. Among other things, it was provided, in said agreement, that the Richmond Bank, who, at all times, until it had been paid in the full amount of the debt and obligation of the Ridgewood Bank to it, have the right to rediscount or pledge as collateral security for money borrowed, any or all of the assets of Ridgewood Bank in its hands as collateral in the same manner as if the said assets were the absolute property of Richmond Bank.

The note, given by the Ridgewood Bank, recites similar provisions. The Ridgewood Bank no longer functioned as a going institution, but it still retained its entity as a National Banking Association.

August 29th, 1931 was a Saturday, and on August 31st, 1931 the name appearing on the quarters formerly occupied by the Ridgewood Bank, was changed from National Bank of Ridgewood in New York, to Richmond National Bank of New York, and the Richmond Bank widely advertised it, as a new branch of Richmond Bank, and all checks drawn on the deposits, which had been in Ridgewood Bank, were at Richmond Banks' direction, made to be drawn instead, on Richmond Bank.

The Richmond Bank remained as a going institution until March 4th, 1933, when it, like all other banks, was closed by proclamation and it has never since reopened.

On March 16th, 1933, a Conservator was appointed for Richmond Bank, and on November 14th, 1933, a Receiver was appointed therefor, who took possession of the books, records and assets of every description of Richmond Bank, including the collateral assets acquired from Ridgewood Bank.

During the period from August 29th, 1931, to March 4th, 1933, the Richmond Bank paid the depositors of the Ridgewood Bank, their deposits, when and as they demanded payment thereof, in full accordance with the agreement for the assumption of such deposits.

Subsequent to the appointment of a Receiver for the Richmond Bank, the depositors thereof, including those who had formerly maintained deposit accounts in the Ridgewood Bank, the payment of which had been assumed by Richmond Bank, filed claims against the Richmond Bank and all such depositors had, up to the time of the filing of the complaint herein been paid dividends totalling 60% of the amount of deposits and no depositors have filed claims against the Ridgewood Bank.

On July 12th, 1937, a Receiver was appointed for the Ridgewood Bank, and on July 29th, 1937, the Comptroller of the Currency, levied an assessment upon the stockholders of the Ridgewood Bank, wherein he recited "that upon an accounting by the Receiver and upon an evaluation of the uncollected assets, remaining in his hands, it appeared to his satisfaction, that in order to pay the debts of the Ridgewood Bank, it was necessary to enforce the liability of the individual stockholders of Ridgewood Bank".

It is admitted that the insolvency of the Ridgewood Bank was officially found by the Comptroller of the Currency, and further that it was officially determined by the Comptroller that the assessment upon stockholders, was necessary, in order to pay creditors, but, in spite of this, the plaintiff's stockholders have brought this representative suit, which seeks to enjoin the collection of the assessment, and to

avoid payment of their statutory liability, as stockholders, to depositors and other creditors. The allegations of the complaint, supplemented by the bill of particulars, are numerous, but, in particular, it is alleged that the assets of Ridgewood Bank were more than sufficient to pay its liabilities; that Richmond Bank repledged some of the pledged assets, although it was clearly allowed by the agreement of August 29th, 1931; that several persons received varying sums of money from the Richmond Bank; that the note given by Ridgewood Bank in consideration of the assumption by Richmond Bank, of its deposits, and which afforded the protection to Ridgewood Bank's depositors, was void because of some alleged oral statement made by individuals, who apparently, although it is not so alleged, were Directors of the Richmond Bank and Ridgewood Bank; that by reason of the assumption of Ridgewood Bank's liability by Richmond Bank and Richmond Banks' taking control of Ridgewood Bank, that the depositors of Ridgewood Bank and the Comptroller waived and released all claims against Ridgewood Bank, and accepted Richmond Bank's assumption of liability instead; that John F. Pitz and John F. Pitz, Jr., delivered a written guarantee to Richmond Bank in the sum of $180,500 collateralled by securities as additional coverage to Richmond Bank; that because of the Pitz guarantee, it was orally agreed between Richmond Bank and Ridgewood Bank that the same would be accepted in lieu of all liability for assessment, or otherwise, against the stockholders of Ridgewood Bank; that the act of the Richmond Bank in taking over the assets of Ridgewood Bank as collateral to its debt was a comingling of assets of both banks; that Ridgewood Bank released John F. Pitz and John F. Pitz, Jr., from liability under their guarantee and returned the securities which were collateralled thereto, alleging if the guarantee had been retained, it would have been more than sufficient to reimburse Richmond Bank for monies expended by it in connection with Richmond Bank's assumption of Ridgewood Bank's liabilities; that the stockholders were not given notice of activities under the liquidation; that the Comptroller, in fraud of the plaintiffs, abrogated the agreement between Richmond Bank and Ridgewood Bank, disregarding the fact that the stockholders of Ridgewood Bank were released from all liability; that the Comptroller of the Currency willfully, arbitrarily and oppressively re-restored Ridgewood Bank to an artificial existence, and reconstructed the assets and made an arbitrary division thereof; that the Comptroller and the Receiver arbitrarily, willfully and oppressively, and in fraud of the plaintiffs, are attempting to extract money from plaintiffs, to be used solely for the payment of Richmond Bank's liabilities, and that the Comptroller has, in fraud of the plaintiffs, disregarded the claim of Ridgewood Bank against Richmond Bank; that the acts of the Comptroller were beyond the powers conferred upon him; that the defendants, Comptroller and Receiver failed, neglected and refused to collect the claim of $1,172,757.-36 of Ridgewood Bank against Richmond Bank, which was the only resource of Ridgewood Bank for the payment of its creditors, but cancelled, abrogated and waived the said claim from the bill of particulars this so-called claim of Ridgewood Bank against Richmond Bank, which turns out to be the note in that amount of Ridgewood Bank given to Richmond Bank; that the valuation of the assets by the Comptroller, excluded as an asset of Ridgewood Bank, the said claim of Ridgewood Bank against Richmond Bank, and involved a grave mistake and error of law and was based upon his unwarranted assumption of judicial power; that the release by the Richmond Bank of Pitz guarantee, released the stockholders from liability through assessment; that the note of $1,172,757.36 of Ridgewood Bank given to Richmond Bank was extended for one year, and the stockholders thereby became released from liability through assessment; that the valuation of the Comptroller was made after an accounting by him and the Receiver, and was based upon an evaluation of assets and liabilities, as of a date when the Ridgewood Bank was no longer a going concern, and was therefore invalid; that suit is barred by the Statute of Limitations.

While there are some variations in the complaint herein, from that in other cases, the attempt to restrain the collection of stock assessment is not new. In fact, the complaint herein seems to have been taken largely from that in Adams v. Nagle, 303 U.S. 532, 58 S.Ct. 687, 82 L.Ed. 999, which suit was recently dismissed on the pleadings by the Supreme Court of the United States.

The stock assessment in the case at bar was levied by the Comptroller, and the suits against the plaintiffs were instituted pursuant to the Statute. Title 12, Section 64 and 191, U.S.Code, 12 U.S.C.A. §§ 64, 191.

■ It has been repeatedly and consistently held since Kennedy v. Gibson and others, 8 Wall. 498, 19 L.Ed. 476, that the determination as to the insolvency of a National Bank and the necessity for an assessment against its shareholders, is committed exclusively to the judgment and discretion of the Comptroller, and is not subject to judicial review. Adams v. Nagle, supra; Forrest v. Jack, 294 U.S. 158, 55 S.Ct. 370, 79 L.Ed. 829, 96 A.L.R. 1457; Rankin v. Barton, 199 U.S. 228, 26 S.Ct. 29, 50 L.Ed. 163.

■ When, as in this case, a bank assumes the debts of another bank, in consideration of a note given by the liquidating bank collateralled by the assets of the liquidating bank, it has been repeatedly held that the note represents the contracts, debts and engagements of the liquidating bank, for which its shareholders are responsible. Wyman v. Wallace, 201 U.S. 230, 26 S.Ct. 495; 50 L.Ed 738; Crawford v. Gamble, 6 Cir., 57 F.2d 15; B. V. Emery & Co. v. Wilkinson, 10 Cir., 72 F.2d 10.

■ I cannot find that the Comptroller was attempting to exercise judicial functions in levying a stock assessment in this case. Bushnell v. Leland, 164 U.S. 684, 17 S.Ct. 209, 41 L.Ed. 598.

■ I cannot find, as alleged by plaintiffs, that in some way, by an oral arrangement, the Directors of the Banks, waived the stock assessment, because I do not believe that, under the law, the Directors or Managing Agents of a National Bank, would be authorized to liberate a stockholder, from his statutory liability, when asserted by creditors. Taylor v. American National Bank, D.C., 2 F.2d 479, 483; Collins v. Caldwell, 5 Cir., 29 F.2d 329; Chase v. Hall, 9 Cir., 30 F.2d 195; Crawford v. Gamble, supra.

■ That the bank had gone out of existence, through a voluntary liquidation, does not prevent a stock assessment by the Comptroller. Stephens v. Hamilton, 7 Cir., 81 F.2d 324; O'Conner v. Watson, 5 Cir., 81 F.2d 833.

■ Plaintiffs make a point of the release by the Richmond Bank of the guarantee given, by John F. Pitz and John F. Pitz, Jr., but it does not seem to me that the liability of the stockholders can be affected by the acts of the Officers or Directors of a bank. Taylor v. American National Bank, supra; Meeker v. Baxter, 2 Cir., 83 F.2d 183.

■ It does not seem to me that the fact of the Richmond Bank extending the note of the Ridgewood Bank for one year, makes any change in the liability of the stockholders.

■ The Statute of Limitations does not seem to me to be a defense, as that Statute relates to the time when actions may be brought against stockholders and not against the time within which the assessment may be levied, and the actions brought on the assessments are well within the time. As I have before stated, the complaint in this action, appears to have been taken in large measure from the complaint in Adams v. Nagle, supra, and that case applies with particular force to the case at bar.

It is true, that in United States ex rel. Citizens' Nat. Bank v. Knox, 102 U.S. 422, 425, 26 L.Ed. 216, it was said, "Although assessments made by the comptroller, under the circumstances of the first assessment in this case, and all other assessments, successive or otherwise, not exceeding the par value of all the stock of the bank, are conclusive upon the stockholders, yet if he were to attempt to enforce one made, clearly and palpably, contrary to the views we have expressed, it cannot be doubted that a court of equity, if its aid were invoked, would promptly restrain him by injunction". Under this decision a number of Federal Courts have said that while an assessment may not be collaterally attacked, it may be avoided by direct attack for "clear error of law, fraud, or mistake".

■ This statement, however, is too broad, and it now appears to be the law that the only ground of successful attack is fraud on the part of the Comptroller. Adams v. Nagle, supra, 303 U.S. at page 542, 58 S.Ct. at page 687, 82 L.Ed. 999.

I have examined with care, the complaint and the bill of particulars, and while there may have been some error of law, although I do not so find, or mistake, but I do not find allegations of fraud, which

would be sufficient to sustain the plaintiff's complaint, and injunction as prayed for.

■ Of course, on a motion of this kind, we must accept as true, the allegations of the complaint, which is supplemented by the bill of particulars, but they do not, in my opinion, charge fraud on the part of the Comptroller, which defines the maintenance of this action.

■ Failure, neglect and refusal to do certain things alleged, and that such actions are in fraud of the rights of the stockholders, are not such charges of fraud, as is contemplated by the Statute. Adams v. Nagle, supra.

■ Plaintiffs contend vigorously that the Richmond Bank is not entitled to any recovery on the note, because they have made no payments to depositors. It is true that the complaint alleges that no such payments have been made, but, it is also true, that by the complaint and bill of particulars, it appears that the Richmond Bank continued to operate for some time, after it took over the Ridgewood Bank and further, it is alleged, that the Richmond Bank paid 60% of the claim of its depositors. The Richmond Bank could not have continued to operate, if it had not paid the depositors, who were originally of the Ridgewood Bank, but who, after the Richmond Bank took over the Ridgewood Bank, became depositors of the Richmond Bank.

It is true that the complaint and. the bill of particulars do not show what sums were paid to such depositors between the time the Richmond Bank took over the Ridgewood Bank, and the time when the Richmond Bank closed.

The complaint and bill of particulars, however, do show that 60% of the claims of the Richmond Banks' depositors were paid under the Receivership, and those depositors must, of necessity, include the Ridgewood Banks' depositors, who became the Richmond Banks' depositors, when it took over the Ridgewood Bank, therefore, there must have been payment made to depositors of the Ridgewood Bank by the Richmond Bank, and that note represents a claim against the Ridgewood Bank.

The plaintiffs point to many details, which neither time nor space permits me to deal with separately, but the two most important things, as I view it, are: 1. There must appear, by the complaint and bill of particulars, direct allegations of fraud on the part of the Comptroller—and this, I do not find. 2. That payments have been made by the Richmond Bank, which make up consideration for the note in question—and which, in my opinion, is shown by the complaint and bill of particulars.

The motion to dismiss is granted.

Settle order on notice.